515 So.2d 161 (1987)
Dion Michael CARAWAN, Appellant,
v.
STATE of Florida, Appellee.
No. 69384.
Supreme Court of Florida.
September 3, 1987.
Rehearing Denied December 10, 1987.
*162 James B. Gibson, Public Defender, Seventh Judicial Circuit, and James R. Wulchak, Chief, Appellate Div., Asst. Public Defender, Daytona Beach, appellant.
Robert A. Butterworth, Atty. Gen., and Richard B. Martell, Asst. Atty. Gen., Daytona Beach, for appellee.
BARKETT, Justice.
We have jurisdiction pursuant to article V, section (3)(b)(5) of the Florida Constitution, based on the district court's request in Carawan v. State, 495 So.2d 239 (Fla. 5th DCA 1986), for "immediate resolution by the Florida Supreme Court due to issues of great public importance."[1] The issue is whether, and under what circumstances, a defendant may be convicted of multiple criminal offenses based on a single act.
The appellant, Carawan, was charged with attempted first-degree murder (by shooting the victim), aggravated battery (by shooting the victim), and shooting into an occupied structure. The charges stemmed from an incident occurring subsequent to a party given by the victim, Memphis Knighten, at his apartment on the night before Knighten's wedding. Although not invited, the appellant appeared with a friend and attempted to speak to the future bride, who had formerly dated Carawan's brother. After being told to leave, Carawan and his friend sat in their car in the parking lot drinking beer and smoking marijuana. After the victim, Knighten, smashed the windshield of the car, Carawan and his friend drove off, threatening revenge.
*163 Later that night, Knighten heard a shotgun blast and went to his back door to investigate, at which time he was wounded. The trial court found that four shots were fired into the structure, but issued no finding on the number that actually struck Knighten. As conceded by both parties on appeal, Knighten was struck with a spray of more than 100 pellets of birdshot, striking him in the arm, rib cage, chest and stomach. Knighten said he believed that two separate blasts hit him, but there was no other testimony establishing with any certainty the number of blasts that actually struck him.
Carawan was convicted of attempted manslaughter, aggravated battery, and shooting into an occupied structure. The trial court accepted the guidelines scoresheet which scored the aggravated battery as the primary offense and listed the attempted manslaughter and shooting into an occupied dwelling as additional offenses, and sentenced Carawan to four and a half years imprisonment on each offense, to run concurrently.
Appellant contends that the record does not establish beyond a reasonable doubt that the victim was struck by more than a single shotgun blast, and that Carawan thus cannot be convicted of both attempted manslaughter and aggravated battery. Alternatively, Carawan argues that even if the victim was struck by two shots, they were fired in such a rapid succession that the two shots were indistinguishable, occurring in the same temporal and spatial relationship with each other, thus causing only a single criminal offense for which the legislature did not intend dual convictions.
The district court, finding that the law of double jeopardy in Florida had become "curiouser and curiouser," declined to rule on the issue and certified it to this Court as a matter of great public importance.
The district court's confusion arises from prior decisions of this Court attempting to divine the legislative intent behind penal statutes by, in some cases, applying a "strict" Blockburger[2] analysis, e.g., State v. Rodriguez, 500 So.2d 120 (Fla. 1986); State v. Baker, 456 So.2d 419 (Fla. 1984), and in other cases, using what at first blush may appear to be a broader approach, e.g., State v. Boivin, 487 So.2d 1037 (Fla. 1986), Mills v. State, 476 So.2d 172 (Fla. 1985), cert. denied, 475 U.S. 1031, 106 S.Ct. 1241, 89 L.Ed.2d 349 (1986). See Barton v. State, 507 So.2d 638 (Fla. 5th DCA 1987) (en banc) (expressing confusion over Florida double jeopardy law). We have accepted jurisdiction to elaborate the constitutional and statutory rationale upon which our prior decisions are grounded.
The central question before us is the proper method of construing criminal statutes in light of the prohibition against double jeopardy contained in the state and federal constitutions.[3] The two double jeopardy clauses forbid not only successive trials for the same offense, but also prohibit subjecting a defendant to multiple punishments for the same offense. As the United States Supreme Court initially and logically explained in Ex parte Lange, 85 U.S. (18 Wall.) 163, 173, 21 L.Ed. 872 (1873):
For of what avail is the constitutional protection against more than one trial if there can be any number of sentences pronounced on the same verdict? Why is it that, having once been tried and found guilty, he can never be tried again for that offence? Manifestly it is not the danger or jeopardy of being a second time found guilty. It is the punishment that would legally follow the second conviction which is the real danger guarded against by the Constitution. But if, after judgment has been rendered on the conviction, and the sentence of that judgment *164 executed on the criminal, he can be again sentenced on that conviction to another and different punishment, or to endure the same punishment a second time, is the constitutional restriction of any value? Is not its intent and its spirit in such a case as much violated as if a new trial had been had, and on a second conviction a second punishment inflicted?
The argument seems to us irresistible, and we do not doubt that the Constitution was designed as much to prevent the criminal from being twice punished for the same offence as from being twice tried for it.
Indeed, the prohibition against double jeopardy was aimed as much at the evil of multiple punishments for single offenses as at the evil of retrial for the same offense:
The double jeopardy provision, as originally submitted by James Madison to the House of Representatives on June 8, 1789, read: "No person shall be subject, except in cases of impeachment, to more than one punishment or one trial for the same offence." ... But, in the Senate, the provision was rewritten to incorporate Blackstone's use of the term "jeopardy" ... and the phrase "be put twice in jeopardy of life or limb by any public prosecution" was substituted for the latter half of Madison's clause... . A conference committee later deleted the words "by any public prosecution." ... The Senate modification of the double jeopardy provision attempted only to clarify the meaning of the clause by incorporating the more familiar commonlaw language... . Thus, there was no intention to eliminate the multiple-punishment prohibition.
Note, A Definition of Punishment for Implementing the Double Jeopardy Clause's Multiple-Punishment Prohibition, 90 Yale L.J. 632, 635 n. 16 (1981) (citations omitted). We find that our own double jeopardy clause in article I, section 9, Florida Constitution, which has endured in this state with only minor changes since the constitution of 1845, was intended to mirror this intention of those who framed the double jeopardy clause of the fifth amendment.
At the same time, however, we recognize that the power to define crimes and punishments in derogation of the common law inheres in the legislative branch, Borges v. State, 415 So.2d 1265, 1267 (Fla. 1982); Wilson v. State, 225 So.2d 321, 323 (Fla. 1969), rev'd on other grounds, 403 U.S. 947, 91 S.Ct. 2286, 29 L.Ed.2d 858 (1971), subject to constitutional limitations. It is presumed, however, that this legislative prerogative is not exercised by punishing the same offense under more than one statutory provision, since the legislature can achieve the same result with greater economy by merely increasing the penalty for the single underlying offense. Thus, before reaching the question of any possible constitutional violation, courts necessarily must first determine what the legislature intended to punish and precisely how. The double jeopardy issue has not been raised in any case in which the legislature clearly, unambiguously and precisely stated an intent to punish the exact same offense under separate statutory provisions,[4] and we do not reach this question today. Rather, the issue has arisen in those cases where it cannot be said with certainty what the legislature intended. Such is the case before us.
To determine intent in this case and those like it, courts resort to time-honored rules of construing criminal statutes, which in this state have been partially codified in our criminal code. The present confusion in the law results from the perception that courts are inconsistently applying these rules of construction, or perhaps, on occasion, are failing to apply any rule at all. We believe, that despite some lack of clarity in the past, the position of this Court can be defined and our prior decisions harmonized.
*165 We begin by reviewing the three main rules of statutory construction applicable in this context.
The first is that absent a violation of constitutional right, specific, clear and precise statements of legislative intent control regarding intended penalties. Only where no clear intent exists does any other rule of construction come into play. As we have noted previously, rules of statutory construction "are useful only in case of doubt and should never be used to create doubt, only to remove it." State v. Egan, 287 So.2d 1, 4 (Fla. 1973). The courts never resort to rules of construction where the legislative intent is plain and unambiguous. Holly v. Auld, 450 So.2d 217, 219 (Fla. 1984); Reino v. State, 352 So.2d 853, 860 (Fla. 1977); Rinker Materials Corp. v. North Miami, 286 So.2d 552, 554 (Fla. 1973). Unfortunately, comprehensive statements of intent are rare because of our increasingly complex criminal codes which are constantly being changed, modified, and amended, not under some thoughtful masterplan, but in piecemeal fashion.
The second rule is that, in the absence of any clearly discernable legislative intent, the court begins by using the test established in Blockburger v. United States, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), to assist in determining this intent. E.g., Houser v. State, 474 So.2d 1193, 1196 (Fla. 1985). Simply stated, the Blockburger test compares the elements of the crimes in question. If both have one element the other does not, then a presumption arises that the offenses are separate, a presumption that nevertheless can be defeated by evidence of a contrary legislative intent. On the other hand, if the test is not met, the court must treat the offenses as equivalent based on a presumption that the offenses are the same and that the legislature does not intend to punish the same offense twice. We have recognized that the legislature has codified this rule of construction in section 775.021(4), Florida Statutes (1985):
Whoever, in the course of one criminal transaction or episode, commits separate criminal offenses, upon conviction and adjudication of guilt, shall be sentenced separately for each criminal offense; and the sentencing judge may order the sentences to be served concurrently or consecutively. For the purposes of this subsection, offenses are separate if each offense requires proof of an element that the other does not, without regard to the accusatory pleading or the proof adduced at trial.
The third rule is that courts must resolve all doubts in favor of lenity toward the accused. This "rule of lenity," a part of our common law, has been codified in section 775.021(1), Florida Statutes (1985):
The provisions of this code and offenses defined by other statutes shall be strictly construed; when the language is susceptible of differing constructions, it shall be construed most favorably to the accused.
The United States Supreme Court, interpreting the federal rule of lenity, has characterized it as
a principle of statutory construction which applies not only to interpretations of the substantive ambit of criminal prohibitions, but also to the penalties they impose. Quoting Ladner v. United States, 358 U.S. 169, 178, 79 S.Ct. 209, 214, 3 L.Ed.2d 199 (1958), we stated: "`This policy of lenity means that the Court will not interpret a federal criminal statute so as to increase the penalty that it places on an individual when such an interpretation can be based on no more than a guess as to what Congress intended.'"
Albernaz v. United States, 450 U.S. 333, 342, 101 S.Ct. 1137, 1144, 67 L.Ed.2d 275 (1981) (citation omitted).[5] Our prior decisions also have described Florida's own rule of lenity as:

*166 a fundamental rule of statutory construction, i.e., that criminal statutes shall be construed strictly in favor of the person against whom a penalty is to be imposed. Ferguson v. State, 377 So.2d 709 (Fla. 1979). We have held that "`nothing that is not clearly and intelligently described in [a penal statute's] very words, as well as manifestly intended by the Legislature, is to be considered as included within its terms.'" State v. Wershow, 343 So.2d 605, 608 (Fla. 1977), quoting Ex Parte Amos, 93 Fla. 5, 112 So. 289 (1927).
Palmer v. State, 438 So.2d 1, 3 (Fla. 1983).
We move now to consider the interrelationship of these rules of construction. We begin with the area of multiple-punishments law that has caused the most trouble in our courts, the proper application of the Blockburger test and its relationship to the question of legislative intent.
The legislative history indicates that the final sentence of section 775.021(4), which was added in the 1983 amendments, specifically was intended to adopt the Blockburger analysis elaborated in the federal courts for more than a half century. See Senate Staff Analysis and Economic Impact Statement, Senate Bill 402, at 2 (April 19, 1983) ("this change codifies the Blockburger test"). As the Florida courts previously have noted, the legislature also intended the last sentence of the statute to be interpreted in light of the body of case law from which it derives. State v. Gibson, 452 So.2d 553, 557 n. 6 (Fla. 1984); O'Brien v. State, 454 So.2d 675, 678 (Fla. 5th DCA 1984).
In Blockburger, the Court held that
where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not.
284 U.S. at 304, 52 S.Ct. at 182.
Much confusion has arisen from a misguided tendency to give this isolated quotation the force of constitutional law, to be applied blindly, mechanically, and exclusively to every multiple-punishments problem. As the United States Supreme Court and our own prior decisions have repeatedly cautioned, the Blockburger test in actuality is only a rule of statutory construction. Missouri v. Hunter, 459 U.S. 359, 367, 103 S.Ct. 673, 678, 74 L.Ed.2d 535 (1983); Albernaz v. United States, 450 U.S. 333, 340, 101 S.Ct. 1137, 1142, 67 L.Ed.2d 275 (1981); Whalen v. United States, 445 U.S. 684, 691-92, 100 S.Ct. 1432, 1437-38, 63 L.Ed.2d 715 (1980); Houser v. State, 474 So.2d 1193, 1196 (Fla. 1985); State v. Baker, 456 So.2d 419, 421-22 (Fla. 1984). We conclude that the legislature itself was fully aware of this fact and intended section 775.021(4) to be treated as a rule of construction, as reflected in the legislative history of the 1983 amendment.[6]
In Florida, it is settled law that rules of construction serve no purpose other than assisting the courts in ascertaining the true legislative intent behind a particular ambiguous statute and carrying that intent into effect to the fullest degree possible. State ex rel. Florida Jai Alai, Inc. v. State Racing Comm'n, 112 So.2d 825, 828 (Fla. 1959); Lanier v. Bronson, 215 So.2d 776, 778 (Fla. 4th DCA 1968). The duty of the judiciary is to give effect to this intent, which itself is the overriding precept of statutory construction. In re Estate of Williams, 182 So.2d 10, 11 (Fla. 1966); In re Estate of Jeffcott, 186 So.2d 80, 84 (Fla. 2d DCA *167 1966). So important is legislative intent that we previously have characterized it as the "polestar" by which the court must be guided. Wakulla County v. Davis, 395 So.2d 540, 542 (Fla. 1981); State v. Webb, 398 So.2d 820, 824 (Fla. 1981). Moreover, we have explicitly recognized that the Blockburger test itself, as a rule of construction, will not prevail over actual intent. Houser v. State, 474 So.2d 1193, 1196 (Fla. 1985); Rotenberry v. State, 468 So.2d 971, 975 (Fla. 1985).
Thus, the only purpose of section 775.021(4) is as an aid in determining the intent behind particular penal statutes when that intent is unclear. To the extent the Blockburger test achieves a result contrary to the true intent, it is inapplicable. Where intent is capable of ascertainment, the presumption created by resort to Blockburger always must bow to the actual legislative intent behind a particular statute.
Of course, no difficulty arises when an enactment contains a clear statement of intent upon its face. Instead, the problem that has led to so much confusion in our courts usually arises from the absence of any express statement of intent. To this issue we now turn.
At the outset, we conclude that the preeminence of legislative intent means that Blockburger necessarily is only the first step in the court's analysis. Although Blockburger creates a presumption as to the actual legislative intent, it is not a blind presumption that may be applied without regard to other relevant evidence of the true intent. It would be absurd indeed to apply Blockburger, which was meant to help determine legislative intent, in a way that actually defeats what reason and logic dictate to be the intent. As has been noted, an exclusive Blockburger analysis sometimes leads to a result contrary to common sense.[7] The courts, however, are obligated to avoid construing a particular statute so as to achieve an absurd or unreasonable result. Wakulla County v. Davis, 395 So.2d 540, 542 (Fla. 1981); State v. Webb, 398 So.2d 820, 824 (Fla. 1981).
We find that unreasonable results sometimes may be achieved by applying no rule of construction other than Blockburger to determine the intent behind a facially ambiguous penal statute. As our courts frequently have noted, the true intent may be discerned in the circumstances and documentation accompanying a law's enactment, its evident purpose, the particular evil it seeks to remedy, the fact that it seeks to protect a particular class or remedy a special problem, or other relevant factors. See Webb, 398 So.2d at 824; De Bolt v. Dept. of Health & Rehabilitative Services, 427 So.2d 221, 224 (Fla. 1st DCA 1983); Englewood Water District v. Tate, 334 So.2d 626, 628 (Fla. 2d DCA 1976). Accordingly, after first applying the Blockburger test, the court then must consider the presumption so created in light of any relevant factors that may indicate a contrary legislative intent.
In light of this conclusion, we now turn to the proper application of Florida's Blockburger rule. When confronted with a facially ambiguous statute, the court begins its analysis by assuming that the legislative branch ordinarily does not intend to punish the same offense under two different statutes. Ball v. United States, 470 U.S. 856, 105 S.Ct. 1668, 84 L.Ed.2d 740 (1985). Next, the court must determine whether each offense as defined in the statute requires proof of a fact that the other does not, without regard to the accusatory pleadings or proof adduced at trial. Blockburger v. United States, 284 U.S. 299, 304, 52 S.Ct. 180, 182, 76 L.Ed. 306 (1932); § 775.021(4), Fla. Stat. If they do not, the offenses are presumed to be the same, and multiple punishments are improper in the absence of express legislative authorization. This authorization must be explicit because of the presumption that the legislative branch does not intend to punish the same offense twice. On the *168 other hand, if each offense indeed requires proof of a fact that the other does not, the court then must find that the offenses in question are separate, and multiple punishments are presumed to be authorized in the absence of a contrary legislative intent or any reasonable basis for concluding that a contrary intent existed.
On the other hand, where there is a basis for concluding that the legislature intended a result contrary to that achieved by the Blockburger test, a conflict arises that requires resort to the third rule of construction applicable to this problem, the rule of lenity.
Initially, we find that Florida's lenity requirement constitutes a rule of construction coequal to the Blockburger test codified in section 775.021(4). Both provisions are related in purpose, since both provide guidelines for the construction of ambiguous criminal statutes. Although the Blockburger test was codified in 1983 and the rule of lenity in 1974, the courts must presume that later statutes are passed with knowledge of prior laws. Oldham v. Rooks, 361 So.2d 140, 143 (Fla. 1978). Thus, a construction is favored that gives each statute a field of operation, as opposed to a construction that considers the former statute repealed by implication. Id. The courts' obligation is to adopt an interpretation that harmonizes two related statutory provisions while giving effect to both. Wakulla County v. Davis, 395 So.2d 540, 542 (Fla. 1981); State ex rel. School Board of Martin County v. Dept. of Education, 317 So.2d 68, 72 (Fla. 1975).
As is self-evident, the presumption created by an exclusive Blockburger analysis may in fact lead to a result contrary to that indicated by the rule of lenity. Blockburger favors multiple punishments wherever each crime has an element not shared by the other. Section 775.021(1), on the other hand, will favor lenity to the accused wherever it is possible to conclude that multiple punishments were not intended, no matter what the elements of the crimes are.
We do not find that these two rules of construction are irreconcilable. Indeed, we believe that each may be accorded a field of operation that harmonizes with the other. This conclusion is grounded in a close analysis of the two rules and their relationship to the question of legislative intent.
Since actual intent must prevail absent a constitutional violation, the two rules are applicable only when legislative intent is unclear. Moreover, by its own terms the rule of lenity comes into play only where the statutes in question are susceptible of differing constructions, that is, when legislative intent is equivocal as to the issue of multiple punishments. See § 775.021(1), Fla. Stat.
Thus, where there is a reasonable basis for concluding that the legislature did not intend multiple punishments, the rule of lenity contained in section 775.021(1) and our common law requires that the court find that multiple punishments are impermissible. For example, where the accused is charged under two statutory provisions that manifestly address the same evil and no clear evidence of legislative intent exists, the most reasonable conclusion usually is that the legislature did not intend to impose multiple punishments. In Prince v. United States, 352 U.S. 322, 328, 77 S.Ct. 403, 406, 1 L.Ed.2d 370 (1957), the United States Supreme Court recognized this principle where the accused was charged simultaneously with bank robbery and entering a bank to commit a felony. The Prince court found that the legislative history was "meager" and concluded that Congress apparently intended the latter offense to apply only when a bank robbery is frustrated before completion, not when carried to fruition. We also recognize that, because of the constant patchwork revisions of Florida's criminal code, certain statutes may be drafted only to punish for frustrated criminal attempts, or to provide special penalties for crimes that essentially are only aggravated versions of other crimes, although perhaps going under different names. In such instances, we do not believe we serve the underlying legislative purpose by assuming that the legislature intended multiple punishments when reason itself points to a contrary conclusion, as where two crimes manifestly address the same evil.
*169 We now proceed to an examination of our prior decisions in light of the foregoing constitutional and statutory analysis. We begin by noting that, where legislative intent is unclear, an examination under this analytic framework can lead to two distinct conclusions. First, the court may find that there is no clear legislative intent and that an examination of relevant factors either provides no clue as to that intent or indicates that multiple punishments actually were authorized. In such cases, the presumption created by the Blockburger test would prevail. Second, the court may find that, although there is no clear legislative intent, an examination of relevant factors provides a reasonable basis for concluding that the legislature did not intend to impose multiple punishments, as where the two crimes address the same evil. In such instances, the rule of lenity requires the court to find that multiple punishments are not authorized, notwithstanding the Blockburger presumption.
Several of our decisions fall into the first category. In State v. Baker, 456 So.2d 419 (Fla. 1984), for instance, the accused had been convicted of first-degree premeditated murder and use of a firearm during commission of a felony. Noting that legislative intent is the overriding issue, but finding none to guide us, we proceeded to analyze the facts of the case under the Blockburger test. Moreover, we found that the two crimes in question shared none of the same elements, tending to show that they addressed separate evils. The rule of lenity was inapplicable since, if any reasonable inference could be drawn from the face of the statutes, it was that the legislature intended the two offenses to be treated as separate. This conclusion was reinforced by the legislature's manifest concern over the proliferation of violent crimes involving the use of firearms. On the basis of the Blockburger test, therefore, we concluded that separate punishments were permissible.
Similarly, in Scott v. State, 453 So.2d 798 (Fla. 1984), we found that dual convictions for manslaughter and child abuse were permissible. Resorting to the Blockburger test, we found that each offense required proof of a fact that the other did not. Moreover, the legislature manifestly had a remedial purpose in mind when it enacted the child-abuse statute. Thus, reason dictates that the legislative intent was to provide extraordinary protections to the victims of child abuse, and that multiple punishments may have been intended.
Also falling within the first category was State v. Carpenter, 417 So.2d 986 (Fla. 1982). In Carpenter we approved dual convictions for resisting arrest with violence and battery on a law enforcement officer occurring during the course of an arrest. Although both offenses sometimes accompany one another, they address essentially separate evils. One is designed to ensure that those suspected of crime submit to lawful authority, while the other is designed to provide special protection to law enforcement officers in fulfilling all of their duties. We found it reasonable to believe that the legislature intended to provide for separate punishments under such circumstances.
Several other decisions fall into the second category. That is, even though legislative intent was not clear, we found that reason dictated that the punishments were not meant to be cumulative. In Mills v. State, 476 So.2d 172 (Fla. 1985), cert. denied, 475 U.S. 1031, 106 S.Ct. 1241, 89 L.Ed.2d 349 (1986), for instance, we found it unreasonable to conclude "that the legislature intended dual convictions for both homicide and the [aggravated battery] that caused the homicide without causing additional injury to another person or property." Id. at 177. Thus, we held that dual convictions were improper. Although not explicit in the opinion, Mills was grounded in the rule of lenity, since the crimes in question addressed essentially the same evil, i.e., the battering of a human being in a manner likely to cause grievous harm. As a result, reason dictated that the legislature did not intend multiple punishments. The rule of lenity required that we resolve the issue in favor of the accused under section 775.021(1), Florida Statutes, and in a way that best preserved the legislative prerogative to define punishments.
*170 Similarly, in Houser v. State, 474 So.2d 1193 (Fla. 1985), we noted that the legislature is presumed not to intend to punish a single homicide under two separate statutes. We thus found dual convictions for DWI manslaughter and vehicular homicide improper where both arose from a single act that had caused a single death. As in Mills, the two statutes in question addressed essentially the same evil, i.e., driving a vehicle in a manner likely to cause a fatal injury to another human being. Finding no legislative intent to the contrary, we therefore resolved all doubts in favor of lenity. Likewise, in State v. Boivin, 487 So.2d 1037 (Fla. 1986), we reached a similar conclusion where a defendant was convicted of both aggravated battery and attempted first-degree murder. Both crimes addressed essentially the same evil, and we thus resolved all doubts in favor of lenity.
Finally, based on the analysis herein, we must recede from our holding in State v. Rodriquez, 500 So.2d 120 (Fla. 1986), which found that a defendant could be convicted of both grand theft and robbery based on the same underlying act. We find that both of these offenses address essentially the same evil, i.e., the taking of property without consent. Dual punishments were thus improper since reason dictated that the legislature's probable intent was only to provide for a more severe penalty when a single theft was accompanied by an additional aggravating factor, not to multiply punishments because other aggravating factors also occurred. Moreover, Rodriquez reached the anomalous conclusion that a defendant could suffer multiple punishments for a single act that constituted a mere property offense, whereas Mills, Houser and Boivin had reached the opposite conclusion when the offenses arose from a single act that resulted in the death of another human being. Such inconsistency is untenable under our law, and we therefore recede from Rodriquez.
Likewise, we must recede in part from our holding in Rotenberry v. State, 468 So.2d 971 (Fla. 1985). There, the accused was convicted of three separate offenses  trafficking in, sale of, and possession of, cocaine. While we agree that sale of drugs can constitute a separate crime from possession, our analysis in this opinion compels us to conclude that a defendant cannot simultaneously be convicted of both sale and possession in addition to trafficking. Logic dictates that trafficking in illegal drugs as defined in the statute necessarily encompasses either or both of the evils addressed by the statutes outlawing sale and possession, since the manifest purpose of the trafficking statute was to penalize those who distribute large quantities of drugs. In this light, the most reasonable conclusion is that the legislature intended the crimes of sale and possession to cover only those situations where an individual violated the drug laws without possessing and selling the quantities of contraband that otherwise would constitute "trafficking."
Thus, although a defendant may be convicted of both sale and possession under the appropriate circumstances, a defendant cannot be convicted of trafficking as well as sale and/or possession.
Turning now to the facts of the case at bar, we conclude that our decisions in Mills and Boivin are controlling. The two offenses for which appellant was convicted, attempted manslaughter and aggravated battery, address essentially the same evil. Although there is some question as to the number of shots that actually struck Knighten, we find that the record does not establish beyond a reasonable doubt that he was struck by more than one blast. Thus, we must conclude that both offenses in question are predicated on one single underlying act.[8] Finding no evidence that the legislature intended multiple punishments under the circumstances at hand, we must conclude that it is most reasonable to believe that no such intent existed. The *171 rule of lenity contained in section 775.021(1), Florida Statutes, thus compels us to resolve all doubts in favor of appellant. As the United States Supreme Court has noted,
While reasonable minds might differ on this conclusion, we think it is consistent with our policy of not attributing to [the legislative branch], in the enactment of criminal statutes, an intention to punish more severely than the language of its laws clearly imports in the light of pertinent legislative history.
Prince v. United States, 352 U.S. 322, 329, 77 S.Ct. 403, 407, 1 L.Ed.2d 370 (1957).
We therefore conclude that dual punishments for attempted manslaughter and aggravated battery arising from the single act committed by Carawan are impermissible.
Accordingly, we remand for vacating of either the attempted manslaughter or aggravated battery conviction. The sentences on the remaining offense must then be recalculated under the guidelines without the improper conviction being scored.
It is so ordered.
McDONALD, C.J., and OVERTON, EHRLICH, GRIMES and KOGAN, JJ., concur.
SHAW, J., dissents with an opinion.
SHAW, Justice, dissenting.
Basic to my disagreement is the majority view that the "central question before us is the proper method of construing criminal statutes in light of the prohibition against double jeopardy contained in the state and federal constitutions," At 163.
With respect to cumulative sentences imposed in a single trial, the Double Jeopardy Clause does no more than prevent the sentencing court from prescribing greater punishment than the legislature intended.
... .
Where ... a legislature specifically authorizes cumulative punishment under two statutes, regardless of whether those two statutes proscribe the "same" conduct under Blockburger, a court's task of statutory construction is at an end and the prosecutor may seek and the trial court or jury may impose cumulative punishment under such statutes in a single trial.
Missouri v. Hunter, 459 U.S. 359, 366, 368-69, 103 S.Ct. 673, 678, 679, 74 L.Ed.2d 535 (1983). Our only task in this instance is to determine legislative intent.
Section 775.021(4), Florida Statutes (1983), provides that

[w]hoever, in the course of one criminal transaction or episode, commits separate criminal offenses, upon conviction and adjudication of guilt, shall be sentenced separately for each criminal offense; and the sentencing judge may order the sentences to be served concurrently or consecutively. For the purposes of this subsection, offenses are separate if each offense requires proof of an element that the other does not, without regard to the accusatory pleading or the proof adduced at trial. (Emphasis added.)
The majority concedes that if this unequivocal mandate of the legislature is followed, the crimes of attempted manslaughter and aggravated battery are separate offenses subject to separate convictions and sentences. Nevertheless, it reaches the conclusion that the legislature did not intend that the separate offenses here, each with a unique element, should be punished with separate convictions and separate sentences. To reach this conclusion, the majority postulates three propositions of law, none of which support the conclusion reached. The first proposition is that it is legislative intent which controls. However, legislative intent must be determined primarily from the language of the statute because the legislature is assumed to know the meaning of words and to have expressed its intent by the use of the words in the statute. S.R.G. Corp. v. Department of Revenue, 365 So.2d 687 (Fla. 1978); Thayer v. State, 335 So.2d 815 (Fla. 1976); Van Pelt v. Hilliard, 75 Fla. 792, 78 So. 693 (1918). There is nothing in the language of section 775.021(4) or the statutes *172 defining the offenses[1] of attempted manslaughter or aggravated battery to suggest that the legislature meant anything other than what it so clearly stated: offenses with unique elements are separate offenses and shall be separately punished. The second proposition is that the legislature is not presumed to have intended to punish the same offense cumulatively. Ball v. United States, 470 U.S. 856, 105 S.Ct. 1668, 84 L.Ed.2d 740 (1985). This proposition does not apply where, as here, the legislative will is clearly to the contrary. Missouri v. Hunter; § 775.021(4). The third proposition is the so-called rule of lenity,[2] codified as section 775.021(1), Florida Statutes (1983):
The provisions of this code and offenses defined by other statutes shall be strictly construed; when the language is susceptible of differing constructions, it shall be construed most favorably to the accused. (Emphasis added.)
By its terms, however, this rule only comes into play if the statutory language is susceptible to differing constructions. Section 775.021(4) is so clear and unambiguous and the meaning of its words so well established that section 775.021(1) is simply not applicable. Moreover, a rule of general construction, such as section 775.021(1), does not stand on the same level as a specific legislative directive, such as section 775.021(4). In summary, there is no basis for resort to the various rules of statutory construction. In the guise of "reasonableness," the majority has simply substituted its judgment for that of the legislature in an area where the authority of the legislature is plenary: the definition of criminal offenses and their relationships to each other, and the prescription of punishments. Whalen v. United States, 445 U.S. 684, 689, 100 S.Ct. 1432, 1436, 63 L.Ed.2d 715 (1980); Wilcott v. State, 509 So.2d 261 (Fla. 1987) (Shaw, J., dissenting); State v. Wimberly, 498 So.2d 929, 932 (Fla. 1986) (Shaw, J., dissenting); State v. Enmund, 476 So.2d 165, 168 (Fla. 1985) (Shaw, J., concurring specially); Bradley v. State 79 Fla. 651, 84 So. 677 (1920).
My next reason for disagreement has to do with how I view the evidence as opposed to the majority view. The record shows that appellant Carawan laid in wait near the back door of the victim's home with a .12 gauge pump shotgun. When the victim and his fiancee reentered the back door after investigating an earlier gunshot, appellant fired three shots at the victim and/or his fiancee, all of which either struck the victim or the home. Two of the shells contained birdshot with over one hundred pellets. One contained doubleaught buckshot with nine pellets, a highly lethal loading suitable for bear hunting. The evidence at trial was that over one hundred of the pellets remained in the victim's left arm after medical treatment. There was no evidence on how many pellets were medically removed. The majority grounds its holding on its finding that the victim was struck by only one shot, i.e., one act, and emphasizes that its holding applies only to separate punishments arising from one act, not one transaction, which it defines as a related series of acts. Thus, the majority concludes that dual punishments for attempted manslaughter and aggravated battery arising from the single act committed by Carawan are impermissible. This reasoning ignores the charging instrument. Appellant was not charged "with attempted first-degree murder (by shooting the victim)" at 162, he was charged with attempted first-degree murder by shooting at the victim.[3]
Thus, for the purposes of attempted homicide, it is irrelevant whether the victim *173 was struck by only one of the shots, by all of the shots, or by none of the shots. Any one of the shots fired at the victim is sufficient to support the conviction for attempted homicide. Indeed, if, as the majority finds, only one shot struck the victim, the other two acts, i.e., missed shots, independently support the conviction for attempted manslaughter. This conclusion is supported by the fact that the majority finds no error in the conviction for shooting at, into, or within an occupied dwelling.[4] In summary, we are dealing with a series of acts, three shots, which may be separately punished even under the rule of law announced by the majority.
Finally, I also disagree with the majority's conclusion that the criminal statutes on aggravated battery and attempted homicide are addressed to the same evil and that conviction and punishment of both offenses is unreasonable. The primary evil of aggravated battery is that it inflicts physical injury on the victim; the primary evil of attempted homicide is that it may inflict death, there is no requirement that the state prove any physical injury. The two statutes are not addressed to the same evil. The relationship between aggravated battery and attempted homicide is different than that between aggravated battery and actual, not attempted, homicide. In the latter, the evils addressed, physical injury and physical injury causing death, merge into one and it is rationally defensible to conclude that the legislature did not intend to impose cumulative punishments. See my special concurrence to Vause v. State, 476 So.2d 141 (Fla. 1985), for an extended explanation of why this is so. Here, however, where appellant unquestionably committed all three offenses, all three caused separate evils, and all three meet the criteria of section 775.021(4) for separate convictions and punishments, the legislative directive to punish cumulatively cannot be said to be unreasonable. I dissent.
NOTES
[1] Although we accepted jurisdiction in this case to resolve what may be construed as a pressing issue, we admonish the district courts in the future to discharge their responsibility to initially address the questions presented in a given case. Article V, section 3(b)(5) is not to be used as a device for avoiding difficult issues by passing them through to this Court. The constitution confines this provision to those matters that "require immediate resolution by the supreme court."
[2] Blockburger v. United States, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932).
[3] The Florida Constitution provides in pertinent part that "[n]o person shall ... be twice put in jeopardy for the same offense... ." Art. I, § 9, Fla. Const.

The federal constitution provides "nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb... ." U.S. Const. amend. V.
[4] In State v. Cogswell, 504 So.2d 464 (Fla. 4th DCA 1987), the court confronted a situation where violation of a misdemeanor gambling statute invariably constituted violation of a separate felony gambling statute. However, the Cogswell court decided the question on equal protection and due process grounds without reaching the double jeopardy issue.
[5] In Albernaz, the Court declined to apply the rule of lenity only because it found a clear legislative intent to impose separate punishments and because the two offenses, importation of drugs and distribution of drugs, address "separate evils." 450 U.S. at 343, 101 S.Ct. at 1144.
[6] When it substantially amended and recodified the criminal code in 1974, the bill title expressly created section 775.021 for the purpose of providing rules of construction and placed a caption on this section to reflect this purpose. Ch. 74-383, Laws of Fla. The bill that codified the Blockburger test in 1983 expressly placed section 775.021(4) under the same caption, "Rules of construction." Ch. 83-156, Laws of Fla. We must assume that the legislature was aware of the legal meaning of this caption, Davis v. Strople, 39 So.2d 468, 470-71 (Fla. 1949), and therefore intended the amended section to be treated the same as any other rule of construction. We so construe section 775.021(4) based on the fact that the legislature itself inserted the caption in question and did not later remove or amend it. Berger v. Jackson, 156 Fla. 251, 256, 23 So.2d 265 (1945). We note that this conclusion is strongly reinforced both by the legislative history cited above and the derivation of section 775.021(4) from a federal rule of construction.
[7] Judge Cowart in his concurring opinion in Bing v. State, 492 So.2d 833, 834-37 (Fla. 5th DCA 1986), notes that a strict Blockburger test often "falsely indicate[s] a substantive difference between offenses when there is actually only a difference between degrees of one substantive offense." Id. at 835-36.
[8] We emphasize that our holding applies only to separate punishments arising from one act, not one transaction. An act is a discrete event arising from a single criminal intent, whereas a transaction is a related series of acts.
[1] § 777.04(1), Fla. Stat. (1985), attempts; § 782.07, Fla. Stat. (1985), manslaughter; § 784.045, Fla. Stat. (1985), aggravated battery.
[2] Lee v. Walgreen Drug Stores, Inc., 151 Fla. 648, 10 So.2d 314 (1942); Ex Parte Bailey, 39 Fla. 734, 23 So. 552 (1897).
[3] In pertinent part, the charge on attempted homicide alleges that Carawan

did unlawfully attempt to murder MEMPHIS KNIGHTEN from a premeditated design to kill him and in furtherance of said attempt did shoot at him with a shotgun contrary to Florida Statute 782.04 and 777.04. (Emphasis added.)
In contrast, the charge on aggravated battery properly alleges an intentional, unwanted touching using a shotgun which caused bodily harm.
[4] § 790.19, Fla. Stat. (1985).