586 So.2d 442 (1991)
James BIVENS, Petitioner,
v.
STATE of Florida, and Hon. James T. Carlisle, Hon. Thomas E. Sholts, Hon. Harold J. Cohen, in their capacity as Judges of the Circuit Court Appellate panel, Respondents.
No. 90-1588.
District Court of Appeal of Florida, Fourth District.
September 18, 1991.
*443 Richard L. Jorandby, Public Defender, and Louis G. Carres, Asst. Public Defender, West Palm Beach, for petitioner.
Robert A. Butterworth, Atty. Gen., Tallahassee, and Georgina Jimenez-Orosa, Asst. Atty. Gen., West Palm Beach, for respondents.
LETTS, Judge.
The defendant was charged in county court, under section 370.12(1)(a), Florida Statutes (1989), with possession of "marine turtle... . eggs." (Emphasis on the use of the plural in the statutory language supplied). The trial court found that each individual egg was a "unit of marine life" under section 370.021(2)(c)5, Florida Statutes (1989). Since the defendant possessed 1,088 turtle eggs, the trial judge not only fined the defendant $500 and sentenced him to 60 days in jail in accordance with section 370.021(2)(a), but also tacked on a fine of $108,800 pursuant to section 370.021(2)(c)5. In other words, he was fined an additional one hundred dollars for each egg possessed. This result was appealed to the circuit court where three circuit judges, sitting in their appellate capacity, upheld the ruling of the county court. From this decision in the circuit court, the defendant now files a petition for writ of common law certiorari which we grant.
The record reflects that when arrested, adjacent to the beach with a bagful of turtle eggs, the defendant was "covered in sand... and had the smell of a skunk." Certainly, he had acted like one and we suspect his odious conduct influenced the trial judge and the three circuit judges who upheld the county court decision. As Justice Holmes remarked: "Hard cases make bad law." Northern Securities Co. v. United States, 193 U.S. 197, 24 S.Ct. 436, 486, 48 L.Ed. 679 (1904).
The case here involves consideration of varying statutory language. The Florida Supreme Court has established rules for interpreting penal statutes. Carawan v. State, 515 So.2d 161, 164-165 (Fla. 1987). The goal is to enforce the legislature's intent, thus, a statute must be strictly construed when its words are plain and unambiguous. Carawan, 515 So.2d at 166; Jones v. State, 356 So.2d 4, 5 (Fla. 4th DCA 1977). The court may also look beyond the face of the statute to examine the legislative history and determine the legislature's intent. Carawan, 515 So.2d at 167. On the other hand, if the statute is ambiguous, all doubts must be resolved in favor of the accused. Id. at 165. Only objectives "clearly and intelligently described in [a penal statute's own] words, as well as manifestly intended by the Legislature, [will] be considered as included within [a statute's] terms." Id. at 166 (quoting State v. Wershow, 343 So.2d 605, 608 (Fla. 1977), quoting Ex parte Amos, 93 Fla. 5, 112 So. 289 (1927)).
In the case at bar, the defendant was convicted of possession of marine turtle eggs. The penalty for this violation is delineated in section 370.021, Florida Statutes (1989), which provides in part:
(2) Unless otherwise provided by law, any person . .. convicted of violating any provision of ... [C]hapter [370] ... shall be punished:
(a) Upon a first conviction, by imprisonment for . .. not more than 60 days or by a fine of not less than $100 nor more than $500, or by both... .
* * * * * *

*444 (c) In addition ..., the court shall assess additional penalties [for] ... major violations as follows:
* * * * * *
1. For ... violation[s] involving ... illegal crawfish or stone crabs... .
2. [S]hrimp... .
3. [O]ysters [or]... .
4. [C]lams ... an additional [monetary] penalty. .. .
5. For a violation involving the taking, harvesting, or possession of any of the following species, which are endangered, threatened, or of special concern:
a. Shortnose sturgeon ...
b. Atlantic sturgeon ...
c. Common snook ...
d. Atlantic loggerhead turtle ...
e. Atlantic green turtle ...
f. Leatherback turtle ...
g. Atlantic hawksbill turtle ...
h. Atlantic ridley turtle ...
i. West Indian manatee ...
an additional penalty of $100 for each unit of marine life or part thereof.
The words of section 370.021 are clear and unambiguous. The statutory sentence for possession of turtle eggs is a maximum of 60 days in jail and a $500 fine for initial violations of Chapter 370, "unless otherwise provided by law." § 370.021(2). The legislature did provide additional penalties by law for illegal takings of crawfish, stone crabs, shrimp, oysters, and clams. § 370.021(2)(c). It also mandated additional $100 fines for each sturgeon, snook, turtle or manatee taken, possessed or harvested. § 370.021(2)(c)(5). However, nowhere did the legislature provide for an additional penalty for the possession of turtle eggs. See § 370.021(2)(c)5. If Florida's legislature intended to impose an additional penalty for the possession of more than one egg, it should have included "eggs" somewhere in section 370.021. It did not.
The additional penalties provided for in section 370.021 are only applicable to the "species" enumerated in that section. This list is finite, and the courts may not make discretionary additions. The supreme court has held that when the legislature specifically refers to one thing, it has implicitly excluded another. Towerhouse Condominium, Inc. v. Millman, 475 So.2d 674, 676 (Fla. 1985). Since the legislature excluded "turtle eggs" from this additional penalty section, the court can fine the defendant for each turtle he possessed, but not each egg.
Furthermore, the Florida Legislature did distinguish between marine turtles and marine turtle eggs in another context. In section 370.12(1)(a), under which the defendant was charged, the legislature prohibited the possession of marine turtle eggs. In section 370.12(1)(b), the legislature only prohibited the destruction of marine turtles and said nothing about eggs. This is an example of the legislature specifically addressing turtle eggs when it intended to do so and, by contrast, only turtles when it chose to do otherwise. The turtles and the eggs were specifically treated separately and not lumped together.
The circuit court acting in its appellate capacity reasoned that the legislature intended to protect marine turtles, so the destruction of the marine turtle egg must be considered the destruction of "a unit of marine [turtle] life." However, nothing in the legislative history indicates that the legislature considered a marine turtle egg to be a "unit of marine life." To the contrary, the legislative history indicates that it never addressed imposing an additional fine for the possession of turtle eggs. Although the omission of an additional penalty may have been a legislative oversight, the court is not at liberty to promulgate laws the legislature forgot to address. An additional penalty for the possession of marine turtle eggs was not described in the words of section 370.021 nor intended by the legislature. Thus, it is not a term of the statute. See Carawan, 515 So.2d at 166.
Additionally, it is indicated that the Division of Marine Resources does not consider a turtle egg to be "a unit of marine life." The Division of Marine Resources is responsible for the administration and enforcement of sections 370.12 and 370.021. See § 370.02(2)(b), Fla. Stat. (1989). This *445 division also administers the reporting requirements for marine fisheries. Fla. Admin. Code Rule 16R-5.001(2). In the agency regulations, the division specifically adopted the definitions of Chapter 370, Fla. Admin. Code Rule 16R-5. However, for administration of the reporting requirements, the division defined "marine life [as] any saltwater fish, saltwater products, or shellfish collected for ... live specimens." Fla. Admin. Code Rule 16R-5.001(2)(a). Turtle eggs are not fish, saltwater products,[1] shellfish nor live specimens.
The trial judge found that not all the eggs taken were fertile and we have no quarrel with that finding. Surely, an egg which is not fertile cannot constitute marine life. Yet, the defendant has been levied a $100 fine for each and every egg taken.
For the foregoing cumulative reasons, we believe section 370.021 quite clearly does not encompass turtle eggs. However, even if we are wrong, there exists, at a minimum, ambiguity[2] which our supreme court unequivocally holds must be resolved in favor of the defendant. State v. Wershow, 343 So.2d at 605.
We hold that the defendant did not receive procedural due process. A clearly established principle of law was violated resulting in a clear miscarriage of justice. See State v. Macias, 481 So.2d 979 (Fla. 4th DCA 1986). We therefore grant the petition, quash the decision below and remand in accordance herewith.
PETITION FOR WRIT OF CERTIORARI GRANTED.
GUNTHER, J., dissents without opinion.
WARNER, J., concurs specially with opinion.
WARNER, Judge, concurring specially.
This case has caused great debate in the panel, and I admit that I was prepared to affirm until Judge Letts wrote the foregoing compelling opinion. A study of the legislative history which our court ordered reflected a desire to punish more severely multiple takings of protected marine species. However, nowhere in the staff analysis or legislative debates is the subject of multiple takings of turtle eggs discussed. Furthermore, I was struck by the fact that a construction affirming the penalty would result in the same $100 fine for each whole marine turtle caught as for each egg, fertile or infertile, which appears to me to be somewhat of an imbalance. It was this ultimate uncertainty and thus ambiguity in the provisions that has led me to concur in the majority opinion.
It is appalling to me that someone could be so callous and indifferent to the plight of the turtles, a true natural treasure of our coastline, as to pluck over 1,000 turtle eggs from their nests. Certainly, the perpetrator's punishment ought to be substantially greater in proportion to the magnitude of the crime, as are all other criminal penalties. The legislature needs to address this clearly in its next session.
NOTES
[1] "Saltwater products" are defined in section 370.01(18), Florida Statutes (1989). The definition does not include turtle eggs.
[2] The circuit court opinion concedes that "the statutory scheme is hardly a model of legislative clarity."