DAVIS, Judge.
Dennis Roberson (the claimant) was employed as a stockman at Winn Dixie when he suffered a compensable injury in the course and scope of his employment on April 15, 1992. He appeals an order determining that he reached maximum medical improvement (MMI) on July 26, 1993, denying temporary total, temporary partial or wage loss benefits for the periods from December 6, 1993, through December 19, 1993, and August 1, 1994, through February 6, 1995, and denying reclassification of all previously paid wage loss benefits as temporary disability benefits. We affirm.
The claimant was injured while loading a truck on April 15, 1992. He initially received treatment from a chiropractor, Dr. Thomas McKeon. Due to the claimant’s continuing complaints of pain, Dr. McKeon referred him for an orthopedic evaluation in July 1992. Dr. W.P. Mahan, an orthopedist, performed that evaluation on August 21, 1992. He felt claimant was at MMI orthopedically, and *296 found no ratable abnormalities. Dr. McKeon subsequently opined that claimant reached MMI from a chiropractic standpoint on November 6, 1992, with a 3.5% permanent partial impairment (PPI) rating of the body as a whole.
Claimant was also seen by another orthopedist, Dr. Ziebelman. He prescribed physical therapy and thought a functional capacity evaluation was indicated. The claimant underwent physical therapy from April 16, 1993, through July 23, 1993. On July 26, 1993, Dr. Ziebelman opined that claimant had reached MMI with a 3.5% PPI of the body as a whole. The employer/carrier (e/c) then administratively accepted the claimant as permanently partially impaired, and began paying wage loss benefits.
Based upon the claimant’s percent of impairment, the e/c correctly calculated that claimant was entitled to a maximum of 52 weeks of eligibility for wage loss benefits. § 440.15(3)(b)4.d.(II), Pla.Stat. (1991). The carrier paid such benefits for 46 out of the next 52 weeks. For six weeks (three 2-week periods), the carrier controverted the claim based upon claimant’s alleged failure to conduct a good faith work search or failure to submit timely wage loss requests. In the order under review, the JCC awarded benefits for four of the six controverted weeks. Benefits were denied for the period from December 6th through 19th, 1993, based upon a finding that the claimant failed to submit a timely wage loss request.
On July 31, 1994, the carrier stopped the payments. The JCC denied benefits sought for the period from August 1, 1994, through February 6, 1995, based upon the conclusion that the claimant had exhausted his eligibility for permanent impairment wage loss benefits before that time.[1] On February 7, 1995, the claimant began a vocational rehabilitation training program, to learn to work with computers, performing data entry. The program lasts approximately one year, and had not yet been completed at the time of the hearing.
The JCC relied upon Dr. Ziebelman’s opinion, and found that the claimant had reached maximum medical improvement on July 26, 1993, and concluded that the claimant’s eligibility for 52 weeks of wage loss benefits has already expired. The claimant argues that his eligibility for wage loss benefits has not even begun because section 440.15(2)(c), Florida Statutes (1991) clearly and expressly provides that
[temporary total disability benefits paid pursuant to this subsection ... shall include such period as the employee may be receiving training and education under a program pursuant to s. 440.49(1). Notwithstanding s. 440.02(8), the date of maximum medical improvement for purposes of paragraph (3)(b) shall be no earlier than the last day for which such temporary disability benefits are paid.
There is no dispute that the claimant is “receiving training and education under a program pursuant to s. 440.49(1).” Indeed, the employer/carrier is paying temporary total disability benefits in conformity with § 440.15(2)(c), Fla.Stat. (1991). The claimant relies upon Cenvill Communities, Inc. v. Brown, 409 So.2d 1147, 1148 (Fla. 1st DCA 1982), in which this court stated that “[wjhere rehabilitation is involved, the date of maximum medical improvement is artificially established by statute after the rehabilitation program has been completed.”
We reject the claimant’s argument that he has never reached MMI for any purpose, despite medical evidence to the contrary, and expressly decline to order the reclassification of all benefits received before his enrollment in the rehabilitation program as temporary disability benefits. The express language of section 440.15(2)(c) only addresses the question of MMI “for purposes of paragraph (3)(b),” in other words, permanent impairment wage loss benefits. It is our obligation to construe the various parts of the Workers’ Compensation Act together, to achieve a consistent whole. Forsythe v. Longboat Key Beach Erosion Control District, 604 So.2d 452, 455 (Fla.1992); Town of *297 Lake Park v. Karl, 642 So.2d 823, 825 (Fla.1st DCA 1994). In doing so, we must, if at all possible, construe related statutory provisions in harmony with one another. Forsythe v. Longboat Key Beach Erosion Control District, 604 So.2d at 455. It is our obligation to avoid interpreting any part of the statute in such a manner as would lead to an absurd result. Carawan v. State, 515 So.2d 161, 167 (Fla.1987); R.F.R. v. State, 558 So.2d 1084, 1085 (Fla. 1st DCA 1990). See also Jackson v. State, 662 So.2d 1369, 1372 (Fla. 1st DCA 1995). We find that section 440.15(2)(c) clearly does not purport to change the accepted definition of maximum medical improvement for purposes of determining entitlement to temporary total or temporary partial disability benefits; the law expressly confines itself to defining MMI for purposes of permanent impairment wage loss benefits. Yet, if we were to conclude that the claimant could not receive any temporary disability benefits after the date when he reached MMI according to the medical evidence, and could not receive any permanent impairment benefits until completion of his rehabilitation training program (as he would not be at MMI for those purposes), this would lead to a patently absurd result. It could not have been the intent of the Legislature to create a situation in which a claimant who would otherwise be eligible for benefits is precluded from obtaining them because he has reached medical MMI and is no longer eligible for temporary disability benefits, but may receive rehabilitation training and thereby would not have reached MMI for purposes of eligibility for permanent impairment wage loss benefits.
Therefore, we interpret section 440.15(2)(e) to provide that one who enrolls in vocational rehabilitation training pursuant to section 440.49(1) is entitled to receive temporary disability benefits despite having reached MMI from a medical standpoint, and need not use any of his or her eligibility for wage loss benefits dining the training period. This is comparable to the situation in Delgado v. LaQuinta Motor Inns, 457 So.2d 572 (Fla. 1st DCA 1984), in which this court affirmed an award of TTD benefits for the interim during which the claimant was hospitalized for tests, even though it was after MMI, and even though the court affirmed the denial of all other TTD benefits sought after the date of MMI. See also LaQuinta Motor Inns v. Delgado, 534 So.2d 887 (Fla. 1st DCA 1988). While Cenvill Communities, Inc. v. Brown, 409 So.2d 1147, 1148 (Fla. 1st DCA 1982) approved the payment of temporary disability benefits in the interim before actual enrollment in the training program, that ease is not in conflict with our opinion today for two reasons. First, and foremost, in Cenvill Communities, Inc. v. Brown there was no determination that the claimant had reached MMI from a purely medical standpoint at any time before his enrollment in the rehabilitation program. In contrast, in this ease, the JCC has determined that the claimant did reach MMI in July 1993, a full year and a half before the claimant enrolled in his vocational rehabilitation training program. Second, the court in Cenvill Communities, Inc. v. Brown awarded temporary disability benefits beginning with the start of the claimant’s efforts to enroll in the training program, finding that the obligation to pay temporary disability benefits “must naturally include the period of counselling and program development necessary to the rehabilitative process.” Id. at 1149. The court did not hold that the claimant was eligible for temporary disability benefits in the entire interim before his enrollment. Mr. Roberson has received temporary disability benefits paid voluntarily from February 7, 1995, when he enrolled in the training program. He is not asserting that he is entitled to benefits any earlier due to a “period of counselling and program development necessary to the rehabilitative process.” We decline to extend Cenvill Communities, Inc. v. Brown to control the eligibility for temporary disability benefits prior to the commencement of the period of program development and the training itself.
In conclusion, we AFFIRM the denial of temporary total, temporary partial, and wage loss benefits in the periods from December 6, 1993, through December 19, 1993, and August 1, 1994, through February 6, 1995, because the claimant had already reached MMI on July 26, 1993, and was not eligible for such benefits or failed to demonstrate his *298 entitlement to the requested benefits. We also affirm the denial of the reclassification as “temporary” of benefits received before enrollment in a vocational rehabilitation program because section 440.15(2)(c) does not redefine MMI for purposes of eligibility for temporary disability benefits.
BARFIELD and ALLEN, JJ., concur.

. The claimant has expressly waived any claim that the JCC erred by denying the final two weeks of entitlement to wage loss, as that time period should have been calculated under Winn Dixie v. Resnikoff, 659 So.2d 1297 (Fla. 1st DCA 1995).