MAKAR, J.,
dissenting.
Our emergency three-judge panel has been asked to certify the trial court’s order in this pending appeal — one that is unquestionably of “great public importance” — to “require immediate resolution by the supreme' court.” Art. V, § 3(b)(5), Fla. Const. ■ Because this case does not “require immediate resolution” by our supreme court, I cannot join in the panel’s certification.
The phrase “require immediate resolution” has two operative components: “require” and “immediate resolution.” Read together, they include only those cases 'with' such an obviously urgent need for a truly immediate and final resolution by our supreme court that leapfrogging the intermediate appellate infrastructure is necessitated to avoid some irremediable result. Certification does not reacfi cases — such as this oné — where immediate resolution may be deemed desirable, but is not required; nor does it reach cases where resolution of the legal issue is ultimately necessary, but *9 not immediately so. In the thirty-four year history of section 3(b)(5), certification has almost- always been withheld unless a decision from our supreme court was deemed necessary within weeks or a few months of certification. See Anstead, Kogan, Hall & Waters, The Operation and Jurisdiction of the Supreme Court of Florida, 29 Nova L. Rev. 431, 533-34 (2005) (“Usually, the cases certified in this manner truly have been pressing.... With rare exceptions, all these cases have involved a significant 'level of both immediacy and finality of fact finding.”) (footnote omitted).
For example, during the thirty-six days of litigation involving the 2000 presidential election — under the enormous pressure of an impending federal elections deadline— district courts of appeal justifiably used section 3(b)(5) to facilitate immediate resolution of major constitutional questions. See, e.g., Gore v. Harris, 772 So.2d 1243, 1247 (Fla.2000) (parties agreed that certification by district court under section 3(b)(5) was proper), rev’d sub nom Bush v. Gore, 531 U.S. 98, 121 S.Ct. 525, 148 L.Ed.2d 388 (2000); see generally Anstead et ah, supra, at 531 (“Its classic use was shown during the 2000 presidential election cases, in which district courts routinely certified the cases directly to the United States Supreme Court.”) (footnote omitted). , . . '
Similarly, certifications in cases from this Court have been issued where truly pressing deadlines were weeks or a few months away.' See, e.g., Am. Civil Liberties Union of Fla., Inc. v. Hood, 881 So.2d 664 (Fla. 1st DCA 2004) (pássing through issue of proposed constitutional amendment being placed on ballot in upcoming election, as being of great public importance requiring immediate resolution by the Supreme Court), review granted, 882 So.2d 384 (Fla.2004); see also Harris v. Coalition to Reduce Class Size, 824 So.2d 245 (Fla. 1st DCA 2002) (certifying case where issue concerned education coalition suit to enjoin the Department of State from placing fiscal' impact statement oh initiative approved by the Supreme Court for inclusion on ■ the immediate general election ballot), review granted, 823 So.2d 123 (Fla.2002), affirming the judgment, Smith v. Coalition to Reduce Class Size, 827 So.2d 959 (Fla.2002).
The notion that a case is so important or has such complexity that a district court should punt it immediately to the supreme court was rejected almost three decades ago. In an oft-cited case (and the rare one without an urgent need for immediate resolution), the Florida Supreme Court made clear that section 3(b)(5) did not create a baton to be passed to ayoid the tough, pressing cases.
Although we accepted jurisdiction in this case to resolve what may ba construed as a pressing issue, we admonish the district courts in the future to discharge their responsibility to initially address the questions presented in a given case. Article V, section 3(b)(5) is not to be used as a device for avoiding difficult issues by passing them through to this Court.
Carawan v. State, 515 So.2d 161, 162 n. 1 (Fla.1987). Rather, the history of section 3(b)(5) reflects an understanding that it should be invoked only when the crunch of time is so.great that a final decision of our supreme court must be made now. Id. (“The constitution confines this provision to those matters that ‘require immediate resolution by the supreme court.’ ”).
Given the exceptionally high bar that section 3(b)(5) sets, the constitutionally-required degree of immediacy does not exist in this case. .Unlike cases such as Bush v. Gore, Hood, and Harris, where an imminent- election was - looming days, *10 weeks, or a few months away, the situation here is far different. This ease involves only the question of the validity of the legislatively-redrawn districts that would apply in the 2016 election cycle, an election that is more than two years down the road. Section 3(b)(5)’s time horizon — -which has never exceeded more than a few months— should not be expanded to a matter whose resolution is not necessitated for over a year. In eases truly requiring immediate resolution by the supreme court, that court accepts review, sets an accelerated briefing and argument schedule, and thereafter issues an expedited decision. Applied to this case, this type of timetable would produce a decision by the end of 2014 — one resolved with alacrity but thereafter sitting oh the shelf unneeded until 2016. That can’t be what the framers of the 1980 constitutional amendment intended.
Notably, the trial court’s ruling that the original legislative plan was constitutionally defective is not an issue in this appeal, the defendants having accepted the judgment; the issue presented here is the appropriate remedial plan (one adopted by the Florida Legislature in special session or some other plan the plaintiffs urged the trial court to adopt). As such, the pen-dency of the interlocutory appeal involving the constitutional privilege of non-parties, Non-Parties v. League of Women Voters of Fla., 89 Fla. L. Weekly D1300 (Fla. 1st DCA June 19, 2014), review granted, 2014 WL 3696491 (Fla.2014), has no relevance in this appeal; the evidence that the parties are fighting over in Non-Parties goes to the merits of the constitutional questions, not the remedy. Because the supreme court’s resolution of Non-Parties has no apparent effect on the issues in this case, basing certification on administrative convenience or judicial economy is unjustified — and beyond the operative language of section 8(b)(6). And certifying a matter as “requiring immediate resolution” may be an adroit way of shifting the burden to the supreme court to decide whether the requisite degree of immediacy exists (since they can reject the certification); but I am skeptical that doing so is the way to go when time is clearly not of the essence.
A few final observations. The first is one made recently by Judge Altenbernd in his dissenting opinion from the Second District’s certification under section 3(b)(6) in Shaw v. Shaw, 177 So.3d 977, 2014 WL 4212771 (Fla. 2d DCA Aug. 27, 2014), There, he disagreed with certification because district courts of, appeal frequently “consider countless questions of great public importance [and].pass through these questions only when they have a level of statewide urgency.” Id. at 981, at ’"S (Al-tenbernd, J., dissenting). Pertinent here, he said that “[i]f we believe the case has some immediacy, we should not grant extensions in this case but should expedite the process.” Zd Citing his dissent with approval, the supreme court declined jurisdiction “at this time,” leaving open’ review at a later date. 39 Fla. L. Weekly S56!a (Fla. Sept. 6, 2014). A similar result seems appropriate here, where plenty of time is available for distinct court review (whether expedited or not). ■
The second observation is that both this Court and the supreme court have shown the facility to resolve cases with high priorities in a timely way.[1] With eighteen to twenty-four months of judicial time ahead, the issues in this case can be ultimately *11 resolved by the supreme court after a stopover in this Court; it may be that this Court’s decision is one in which a majority of the supreme court agrees, making certification a superfluous step,. Indeed, if this case is certified now, and the supreme court accepts review, it will likely become one of numerous cases (high profile and otherwise) that make up its crowded docket. In the time the case is on the supreme court’s docket awaiting disposition, a decision of this Court would have been issued expeditiously. For example, the panel in No'Hr-Pwitws had prepared opinions for release within two weeks of the case being docketed, and we now have expedited en banc procedures in' place to avoid delays that process might otherwise impose; the likelihood of a dilatory decision from this Court is trivial. Moreover, the supreme court would benefit from written opinions, even if they express different viewpoints, as was reflected in the supreme court’s reliance in its legislative privilege decision in League of Women Voters of Florida v. Florida Home of Representatives, 182 So.3d 185 (Fla.2013), in which it relied oh the dissenting opinion in this Court’s decision in Florida House of Representatives v. Romo, 113 So.3d 117 (Fla. 1st DCA 2013). See also Fla. Dept of Agric. & Consumer Servs. v. Haire, 824 So.2d 167 (Fla.2002) (“If we eventually are called upon to adjudicate the constitutionality of [the statute at issue] or any related issues, our decision will be a more informed one because of that intermediate appellate review.”) (Pariente, J., concurring).
In conclusion, .this case is not one requiring the immediate resolution by the supreme court. Simply because a case is very important does not make its “immediate resolution by the supreme court” necessary. Certification under section 3(b)(5) amounts to a 9-1-1 call to the Florida Supreme Court: “You’re needed now I” That call is not justified in this case, ample time existing for the normal appellate process to be followed-over the next two years This Court can handle the matter expeditiously, leaving more than adequate time for supreme court review, if it deems it necessary.

. In original reapportionment cases, the supreme court adjudicates disputes in thirty days. Art. Ill, § 16(c), Fla. Const. ("The supreme court, in accordance with its rules, shall permit adversary interests to present their views and, within thirty days from the filing of the petition, shall enter its judgment.”).