596 So.2d 1099 (1992)
Tyrone FOSTER, Appellant,
v.
STATE of Florida, Appellee.
No. 90-1297.
District Court of Appeal of Florida, Fifth District.
March 6, 1992.
Rehearing and Rehearing Denied April 29, 1992.
James B. Gibson, Public Defender, and M.A. Lucas, Asst. Public Defender, Daytona Beach, for appellant.
*1100 Robert A. Butterworth, Atty. Gen., Tallahassee, and Bonnie Jean Parrish, Asst. Atty. Gen., Daytona Beach, for appellee.
Rehearing and Rehearing En Banc Denied April 29, 1992.
PETERSON, Judge.
Can a defendant be convicted of both robbery, under section 812.13(2)(c), Florida Statutes (1987), and aggravated battery, under section 784.045(1)(a), Florida Statutes (1987), when the course of conduct giving rise to the charges did not involve a weapon and involved a single incident or event? Does section 775.087, Florida Statutes (1987), enter into consideration of the first question? This latter statute requires the reclassification of a second-degree felony, in which the use of a weapon is not an essential element, to a first-degree felony when the crime is coupled with aggravated battery. In this case, no consideration was given to the existence of section 775.087. Instead, the state charged the appellant, Tyrone Foster, with robbery and aggravated battery in two separate counts. The trial court gave the standard jury instructions for the two crimes, and the jury found him guilty.
The incident out of which the conviction arose occurred on March 30, 1988. Foster and his accomplice, Spook, attacked the victim outside a convenience store by pushing him down onto the pavement and then hitting him in an attempt to take his wallet. While on the ground, the victim repeatedly said that he had nothing and attempted to use his hand to keep the wallet. The attackers succeeded in obtaining the wallet after ripping the pocket from the victim's trousers. During the robbery in which $17 was taken, the victim's elbow was shattered and required extensive surgery.
Foster appeals his judgment and sentence for aggravated battery, alleging violation of the double jeopardy clauses of the federal and state constitutions in that the convictions were based upon the same conduct.
The robbery statute, section 812.13(1), defines the offense as a "taking of money ... from the person or custody of another when in the course of the taking there is the use of force, violence, assault, or putting in fear." The statute does not distinguish between the variable degrees of force, violence, assault, or fear that is used in accomplishing the crime. Section 812.13(2) elevates this second-degree crime to one of the first degree if the offender carries a firearm or other deadly weapon while committing the robbery. No weapons were used in the instant case.
Section 812.13(3)(b) defines the words "in the course of the taking" used in subsection (1) of the statute defining robbery. Subsection (3)(b) states: "An act shall be deemed `in the course of the taking' if it occurs either prior to, contemporaneous with, or subsequent to the taking of the property and if it and the act of taking constitute a continuous series of acts or events." The evidence in the instant case establishes conclusively that the battery committed by Foster was an act or a series of acts which occurred in the course of the taking.
Factually, the instant case is similar to Rowe v. State, 574 So.2d 1107 (Fla. 2d DCA 1990), review denied, 576 So.2d 290 (Fla. 1991), where the victim was departing from a supermarket when the defendant rushed toward her and grabbed her purse. As the victim struggled to retain the purse, she fell or was pushed to the ground and suffered a broken elbow and shoulder and a slight concussion. The defendant ran off with the purse but was apprehended and charged with aggravated battery and robbery. The similarities end here because, instead of finding the defendant guilty of aggravated battery, the jury found him guilty of robbery and the lesser included offense of simple battery.
The Second District, agreeing with our earlier decision in Sheppard v. State, 549 So.2d 796 (Fla. 5th DCA 1989), noted: "The force that was used to take the victim's purse and was necessary to constitute the offense of robbery was the same force used to support the battery conviction." Rowe, at 1107. Based on these facts and pursuant to section 775.021(4)(b)(3), the court concluded that the battery conviction was a category two lesser included offense *1101 of robbery, that the statutory elements of battery were subsumed by the greater offense of robbery, and that convictions of both were improper. The instant case differs from Rowe in that Foster was convicted of aggravated battery and robbery, both second-degree felonies. Generally, a felony cannot be subsumed by another of the same degree. See State v. Carpenter, 417 So.2d 986 (Fla. 1982); Ray v. State, 403 So.2d 956 (Fla. 1981). It is for that reason that aggravated battery is not listed in either of the two categories in the schedule of lesser included offenses of robbery without a weapon. See In Matter of Use by Trial Courts of Standard Jury Instructions in Criminal Cases, 431 So.2d 594 (Fla. 1981), modified, 431 So.2d 599 (Fla. 1981).
The parties have not cited nor have we found a reported case on double jeopardy in which a defendant was convicted of these two crimes where, during the commission of a robbery, the defendant also commits an aggravated battery without a weapon.[1] In Cave v. State, 578 So.2d 766 (Fla. 1st DCA 1991), the First District sustained dual convictions for armed robbery, a first-degree offense, and aggravated battery, a lesser included second-degree offense. The Cave court stated in dictum: "Since a robbery may, but does not necessarily include an aggravated battery, the statutory offense of `robbery' does not `subsume' the crime of aggravated battery. Thus, the same act may be punishable as two different offenses under section 775.021(4)(a)." Cave, at 767. The court pointed out that the offenses were committed after July 1, 1988, the effective date of the amendment to section 775.021(4), Florida Statutes (Supp. 1988). The court also pointed out that its decision created conflict with the Second and Fifth Districts because of the Rowe and Sheppard decisions.
The double jeopardy question raised in the instant case requires an analysis of legislative intent as enunciated in Carawan v. State, 515 So.2d 161 (Fla. 1987), since the incident giving rise to the convictions took place prior to the July 1, 1988, effective date of section 775.021(4), Florida Statutes (Supp. 1988). The first rule under Carawan is that "clear and precise statements of legislative intent control... ." Carawan, at 165. Such statements are usually nonexistent, as the opinion noted, and the instant case is no different. The second rule is that, in the absence of any clearly discernible legislative intent, the test established in Blockburger v. United States, 284 U.S. 299, 52 S.Ct. 180, 76 L.Ed. 306 (1932), must be used in determining intent.
Blockburger requires comparison of the elements of the crimes of robbery and aggravated battery. If each has one element that the other does not have, then a presumption arises that the offenses are separate, a presumption that nevertheless can be defeated by evidence of a contrary legislative intent. Id.; § 775.021(1), Fla. Stat. (1987). Application of the comparison test indicates that each crime has an element the other does not. To prove aggravated battery, the state need not establish an intent to deprive. To prove robbery, the state is not required to establish that the defendant intentionally or knowingly caused great bodily harm, permanent disability, or permanent disfigurement to the victim. If, in the course of a simple robbery without a weapon, the robber commits *1102 a battery in which he knowingly causes great bodily harm to his victim, the robber, for whatever his reasons, has committed a second crime for which punishment is also due.[2] Forming an intent to deprive a person of property and using force, violence, assault, or placing the victim in fear to achieve that purpose is different from intentionally causing great harm, permanent disability, or permanent disfigurement to an individual. The jury, based on the standard robbery and aggravated battery instructions given, properly found Foster guilty of both crimes. It may be argued that the finder of fact should not be required to "measure" the degree of force or violence used in the robbery, but such is the task assigned to it when it must determine whether a defendant is guilty of battery under section 784.03 or aggravated battery under section 784.045.
Having found that each crime has a noncommon element requires further analysis to determine whether the presumption that the offenses are separate may be defeated by evidence of contrary legislative intent.[3] This analysis begins to raise a doubt that convictions for both crimes are proper since evidence of contrary legislative intent may exist to defeat the presumption that the offenses are to be treated separately. That doubt stems from section 775.087, Florida Statutes (1987), which requires an upward reclassification of a felony when an aggravated battery occurs during the commission of the felony. This statute appears to eliminate a separate charge of aggravated battery when it has been proven that a defendant committed that offense during the commission of a felony in which the use of a weapon or firearm was not an essential element. It appears that aggravated battery is always a lesser included offense when a felony is enhanced by that offense under section 775.087 and that such enhancement is required when that offense is coupled with another qualifying felony. Nonetheless, we must conclude that, under State v. McKinnon, 540 So.2d 111 (Fla. 1989), a post-Carawan, pre-July 1, 1988, case, a defendant can be convicted of both aggravated battery and robbery.
In McKinnon, the defendant was convicted of manslaughter under count one and display or use of a firearm during the commission of a felony under count two. The state originally had charged the defendant with second-degree murder in count one, but a jury found him guilty of the lesser included offense of manslaughter. Following the verdict, the trial court calculated the defendant's score sheet on the basis of the manslaughter conviction qualifying as a first-degree felony. The district court agreed with the computation but remanded to have the judgment reflect the trial court's attempted enhancement of the manslaughter conviction from a second-degree to a first-degree felony under section 775.087(1)(b), Florida Statutes (1985), because of the use of the firearm. On remand, the district court also directed the lower court to vacate the firearm count as it became subsumed by the enhanced manslaughter. The supreme court then quashed the district court's opinion. The supreme court stated that section 775.087 "permits such a reclassification when the jury finds that a defendant has committed a crime using a weapon or firearm."[4] The enhancement of the manslaughter charge was reversed because the jury failed to make that required specific finding in the manslaughter count. The supreme court nevertheless reinstated the firearm conviction, finding specifically that conviction under that count without enhancement of the manslaughter count "does not run afoul of our decision in Carawan." McKinnon, at 113. Thus, the supreme court concluded that the enactment of section 775.087 was not evidence of an intent to prohibit two felony convictions for one act of manslaughter in which a firearm was used during the commission of the primary felony.
*1103 In the instant matter, the state did not raise section 775.087, and, as in McKinnon, the jury did not make the specific requisite finding in its verdict on the robbery count that, during the commission of the robbery, an aggravated battery occurred so that the enhancement to a felony of a first degree could be imposed, a permissive but evidently not a mandatory requirement under the McKinnon decision. Given the holding in McKinnon, together with a comparison of the elements of these two crimes as required by Blockburger, we conclude that Foster's two convictions were not violative of a double jeopardy prohibition. Foster was not subject to "multiple punishments for the same offense." Carawan, at 163. This conclusion is reinforced by section 775.087 itself which recognizes aggravated battery as a separate crime that may be used to enhance other felonies. A robbery committed without a firearm is not exempted by the statute from that enhancement.
The Carawan analysis includes an examination of whether the two crimes address the same evil to determine whether the legislature intended to impose multiple penalties. For example, in Carawan, the two offenses under consideration, attempted manslaughter and aggravated battery, addressed essentially the same evil, i.e., the battering of a human being in a manner likely to cause grievous harm. In the instant case, robbery addresses two evils, the unlawful taking of the property of another and the use of force, violence, assault, or putting in fear of another while taking the property. Although aggravated battery, like robbery, addresses the evil of the use of force and violence, additionally it addresses the use of force and violence meant to cause great bodily harm, permanent disability, or permanent disfigurement.
The judgment and sentence for both offenses of robbery and aggravated battery are affirmed.
AFFIRMED.
W. SHARP, J., concurs.
COWART, J., dissents with opinion.
COWART, Judge, dissenting.

I. THE QUESTION:
The legal question in this case is:
When an accused is charged with the offense of robbery (§ 812.13, Fla. Stat.) and also some other offense involving violence, such as battery (§ 784.03, Fla. Stat.) or aggravated battery (§ 784.045, Fla. Stat.) and both offenses occur during a single factual event ("incident," "transaction" or "episode") can the accused be convicted of both offenses and, if so, under what circumstances, OR, conversely, can both offenses be "the same offense" within the constitutional prohibition against a person being twice put in jeopardy for "the same offense" and, if so, under what circumstances?

II. THE CONSIDERATION:
A theoretical answer to this question requires an analysis of the scope or parameter of the "force" or "violence" element in the robbery offense and a comparison of that element with the scope of a separate offense requiring violence. The scope of an element in a criminal offense is delineated by the reason for that element; therefore, logical analysis must focus on the purpose of the force element in the robbery offense.

II. A. HISTORICAL PERSPECTIVE ON CRIMINAL OFFENSES  THEFT, CRIMES AGAINST PERSONS AND ROBBERY:
Some historic perspective may be helpful to understanding. In the beginning there were but two basic offenses, one against the person  homicide,[1] and one against property rights  stealing.[2] Common law and statutory crimes can be logically classified many different ways but two of the most basic and common categories or directories are (1) crimes against persons and (2) crimes against property.[3] Homicide, while *1104 still the most serious, is now but one degreed offense within the larger category of offenses against the person. Stealing, larceny or theft, however defined, is still the basic or core offense against property rights. Since Old Testament time the most significant change of substance has been the creation of offenses against the person, other than homicide. There is now a whole class of criminal offenses against hurting or harming of the individual, which category includes assault, battery, attempted murder, rape, mayhem, false imprisonment, kidnapping, etc.
Simple larceny[4] is still the nuclear crime against property with almost[5] all other property crimes being created by using the elements of common law simple larceny as a nucleus, or core group of elements to which are universally added various ancillary elements. These auxiliary or satellite elements are added for the purpose of creating, and providing different levels of punishment for, special or aggravated forms or degrees of larceny, and are not elements of the core offense itself.
In the development of the early English common law, there came into existence two mixed or compound larcenies which had all of the properties of simple larceny but were accompanied by one, or both, of the aggravations of the felonious taking of personal property from one's house or from one's person. Each of these two compound or double offenses was in effect the combining of two offenses  one against property and the other against a dwelling or a person  into one greater offense with more punishment provided for the one greater than that provided for the conviction of both of the lesser included offenses.[6]
The original aggravated larceny from the dwelling house of another developed into the offense of burglary and later lost its larceny basis and became solely an offense against a habitation or dwelling (and still later any structure) when over time that offense became focused on punishing the "evil" of wrongfully breaking the security of dwellings of others in the nighttime not only to steal but to commit other offenses.[7]
Larceny from the person was at first of two types, of which one[8]  stealing by open *1105 and violent assault, was called robbery.[9] Blackstone[10] states that "open and violent larceny from the person, or robbery, is the felonious and forcible taking from the person of another of goods or money of any value by violence or putting him in fear"[11] and that, as in larceny, there must be a taking, otherwise there is no robbery, and that the taking[12] must be by force or a previous putting in fear which makes the violation of a person more atrocious than a stealing; for according to the maxim of the civil law, "qui vi rapuit, fur improbior esse videtur."[13] Blackstone explains that this "previous" force or putting in fear is the criterion that distinguishes robbery from other larcenies and that if one steals money from the person of another, and afterwards keeps it by putting him in fear, there is no robbery because the fear was subsequent to the taking and did not result from it. Dr. William Draper Lewis, in his footnote commentaries on Blackstone's Commentaries, cites (page 1640, n. 32) Mr. Justice Ashurst, 1 Hale 534, as explaining "the true definition of robbery is the stealing or taking from the person of another, or in the presence of another, property of any amount with such a degree of force or terror as to induce the party unwillingly to part with his property. ... The principle ingredient in robbery is a man's being forced to part with his property...." [Emphasis added.]
2 Burdick, The Law of Crime § 599c p. 425 (1946) states:
From the very nature of robbery, the violence or putting in fear, since they are the means whereby the owner's resistance to the taking of his property is either overcome or prevented, must precede or be concurrent with the taking. Fear, however, although the threats may have been previously made, must exist at the time the owner parts with his property. If there is neither violence nor fear when the property is stolen, the case is not one of robbery, and subsequent violence or putting in fear by threats on the part of the thief, in an effort to escape or *1106 to prevent recapture of the property, does not make it so, since such violence or putting in fear is not contemporaneous with the taking. [Footnote omitted].
These basic principles of the purpose, and therefore the scope, of the force element in robbery were recognized long ago by the Supreme Court of Florida in Montsdoca v. State, 84 Fla. 82, 93 So. 157 (1922); and much more recently in Royal v. State, 490 So.2d 44 (Fla. 1986), quashing 452 So.2d 1098 (Fla.5th DCA 1984). See also, Milam v. State, 505 So.2d 34 (Fla. 5th DCA 1987); Flarity v. State, 499 So.2d 18 (Fla. 5th DCA 1986); Hogan v. State, 493 So.2d 84 (Fla. 4th DCA 1986); Kelly v. State, 490 So.2d 1383 (Fla. 5th DCA 1986); Annot. Use of Force or Intimidation in Retaining Property or In Attempting to Escape, Rather Than in Taking Property, as Element of Robbery, 94 A.L.R.3d 643 (1979).
Common law larceny and statutory theft (§ 812.014, Fla. Stat.) are strictly crimes against property alone. Assault (§ 784.011, Fla. Stat.) and battery (§ 784.03, Fla. Stat.) are strictly crimes against persons. However, both common law robbery and statutory robbery (§ 812.13(1), Fla. Stat.) are crimes not only against property but also against the person in possession of the property taken,[14] because in robbery the property must be taken from the actual possession of a person and that taking must be accomplished by "the use of force, violence, assault, or putting in fear."[15] The degree or amount of force or violence necessary to constitute such robbery is immaterial.[16] Whenever force or violence is employed to obtain possession of the property or overcome resistance to its taking it is robbery, regardless of how great or how slight the force used.
That degree of force or violence or threat against a person which is calculated to be sufficient to forcefully wrestle property from an unwilling victim, or to cause an unwilling possessor to surrender property in order to prevent a threatened harm, is the "force" element in a robbery and, independent of the larceny itself, that force invariably constitutes one or more of the many present day criminal offenses against the person  either an accomplished or attempted assault or battery, of some degree or another, or extortion or some other offense against the person.
If the force or violence used in a particular robbery to accomplish a taking would, independent of the taking of property, constitute the separate offense of battery, as prohibited by section 784.03, Florida Statutes, then the constiuent elements of the separate crime of battery are, included in, and "subsumed by"[17] the robbery offense.[18] Likewise, when the force or violence used in a particular robbery to accomplish a taking of property, would, independent of the taking of property, constitute the separate offense of aggravated battery, as prohibited by section 784.045, Florida Statutes, and that same force is the force used to take the property, then the separate crime of aggravated battery is included in, "and subsumed by," the robbery offense.
The common law definition of robbery does not attempt to quantify or limit the amount of force involved  it would apparently extend to, but not include death, in *1107 which latter event, the "greater"[19] offense would be felony murder. When the evidence in a robbery case shows that the acts constituting an associated "violence" offense were the same acts used to gain possession in the robbery and constitute the "force" element in the robbery offense, then all of the elements of the otherwise separate, independent "violence" offense become sub-elements of the "force" element in the robbery offense, and substantively and legally, the two offenses merge and become "the same offense" within the constitutional double jeopardy prohibition exactly the same as if the associated violence offense was technically a necessarily lesser included offense, or both were true[20] degree crimes and degrees of one and "the same offense."
On the other hand, a robber can commit both a robbery and an independent "violence" offense upon the same victim at or about the same time and does so when the force or violence constituting the separate offense is not used to accomplish the taking in the robbery offense.[21] This occurs when after the "taking" of the personal property from the person, more force or violence is used by the robber against the victim for some ill purpose other than to accomplish the completed taking.[22]
Although the "force" used to take possession of property being stolen is usually applied or threatened before the accomplishment of the taking ("cause" usually temporally precedes "result"), and force or violence directed toward a robbery victim after the taking has been accomplished is usually not perceived as being intended to accomplish the taking, nevertheless, the essence of the distinction is not simply the temporal relationship between the force (or violence) and the taking, but the motive, purpose or intent of the offender in using the force or violence as perceived by the fact-finder. The "force" element in common law robbery relates causally only to the technical element of taking (manucaption) in a common law larceny (or robbery), and not to the successful accomplishment of the whole crime.
In Montsdoca and Royal, the Florida Supreme Court understood and properly applied the common and statutory law relating to force or violence which occurs after the taking. However, the result in Royal motivated the legislature to amend the robbery statute to extend the scope of the force element beyond its original purpose (to accomplish a taking) and to include force used to retain possession of taken property or to accomplish an escape from *1108 the crime scene. (See § 812.13(3)(b), Fla. Stat., as amended by Chapter 87-315, § 1, Laws of Florida, effective October 7, 1987). This amendment will cause some post-taking violence following a non-violent larcenous taking to now constitute a statutory robbery when that violence previously would not have caused the prior taking to be a robbery. However, there will be a price to pay to extend the force element in robbery to post-taking violence because now some post-taking violence will be included in conduct that already constitutes robbery and in that event such post-taking violence, now statutorily included in the robbery, can not now be constitutionally prosecuted as a separate violence offense which was possible prior to this amendment of the robbery statute. There is no such thing as a free meal. So it is with conduct and criminal offenses. Certain conduct may support convictions for two distinctly different "lesser" offenses OR one "greater" offense (composed of the two lesser offenses) but not convictions for both the greater offense and one of the included lesser offenses. An unintended result of this statutory change is to now encompass within the statutory definition of a robbery post-taking violent conduct which would have otherwise justified a conviction in addition to a preceding completed robbery offense, thus merging subsequent violent conduct following a completed robbery into the robbery and preventing a separate conviction for some violence offense in addition to the robbery.[23]

II. B. JUDICIAL ANALYSIS OF CONSTITUTIONAL DOUBLE JEOPARDY  IDENTITY OF OFFENSE PROBLEM:
The genuine theoretical issue is whether all elements of each crime should be compared (i.e., the strict Blockburger test erroneously advocated by the dissent in Rodriquez v. State, 443 So.2d 236 (Fla. 5th DCA 1983) and adopted by the supreme court in Rodriquez v. State, 500 So.2d 120 (Fla. 1986) and receded from in Carawan v. State, 515 So.2d 161 (Fla. 1987)) or whether the true theoretical analysis should be a "modified," improved or refined Blockburger test, that compares only the core or nuclear elements of each compared offense, adopted to a progressive degree in Carawan v. State, 515 So.2d 161 (Fla. 1987), and advocated in the separate opinions in Bing v. State, 492 So.2d 833 (Fla. 5th DCA 1986), decision approved, 514 So.2d 1101 (Fla. 1987); Collins v. State, 489 So.2d 188 (Fla. 5th DCA 1986); Thompson *1109 v. State, 487 So.2d 311 (Fla. 5th DCA 1986), rev. denied, 494 So.2d 1153 (Fla. 1986); and Gotthardt v. State, 475 So.2d 281 (Fla. 5th DCA 1985). See also later opinions in Smith v. State, 548 So.2d 755 (Fla. 5th DCA 1989); Bradley v. State, 540 So.2d 185, note 3 (Fla. 5th DCA 1989); Flarity v. State, 527 So.2d 295 (Fla. 5th DCA 1988). The strict Blockburger test will give a false reading in this case (involving robbery and aggravated assault) because, simplistically, it can be correctly stated that each offense contains at least one element the other offense does not have (the taking element in the robbery and the great bodily injury element in the aggravated battery) just as the test failed in Rodriquez (involving robbery and grand theft). In this case and in Rodriquez, the strict Blockburger test falsely indicates two discrete offenses permitting two convictions because in both cases the offenses compared contain the same core offenses which contain the same constituent elements: in Rodriquez the core offense, common to both the robbery and the grand larceny, was theft; in this case the core offense, common to both the robbery and the aggravated offenses, is a core offense of "violence against the person." In both situations the distinguishing elements are not elements of the core offenses, only ancillary elements distinguishing degrees of the same core offense: in Rodriquez the value of the goods taken in grand larceny and the force element in the robbery offense and, in this case, the degree or result of injuries suffered from the violence offense of aggravated battery and the force or violence element in the robbery offense. The analytical problem is compounded and confused by the fact that, peculiarly, the robbery offense, like a double yoked egg, has two core offenses, theft and violence against the person, making a comparison with other offenses involving theft or violence doubly difficult.
The word "evil" in Carawan v. State, 515 So.2d 161 (Fla. 1987) denotes the basic wrongful conduct intended to be proscribed by a statutorily defined criminal offense and refers to the elements constituting a basic core or nuclear offense as distinguished from elements used to establish and distinguish between degrees of egregiousness, aggravation and punishment. This concept has been suggested in the opinions, cited above, advocating a refined Blockburger test for substantive difference in which only elements of the core offenses are compared and not elements added to the core offense to subdivide one basic offense into many more specific instances of the one basic offense.

II. C. JEOPARDY  A HYPOTHETICAL CASE:

II. C. 1. THE CRIMINAL CODE:
The hypothetical sovereign State of Jeopardy becomes the 51st State in the United States with the usual state constitution. The legislature immediately passes an omnibus criminal statute as Chapter 666, Jeop. Stat.
Section 666.01 finds that the protection of the public requires, and it is the declared intent of the legislature, that a defendant should be convicted and sentenced for each and every violation of each and every statute defining a crime. Section 666.02 defines theft generally. Section 666.03 prohibits various specific punishable theft felonies as follows:
.03(1)  theft in the evening (PM)
.03(2)  theft within a city
.03(3)  theft from a person over 50 years of age
.03(4)  theft by a person under 21 years of age
.03(5)  theft from a person's presence
.03(6)  theft by trick
.03(7)  theft by stealth
.03(8)  theft of legal tender
.03(9)  theft of property of more than $50 in value
.03(10)  theft from security containers including clothing pockets, purses and wallets
.03(11)  theft on public conveyances
.03(12)  theft by a person of one sex of property of a person of the opposite sex
Section 666.05 defines harm to a person generally. Section 666.06 defines various *1110 specific harmful offenses to persons, in the manner section 666.03 defines specific punishable theft offenses, i.e., harm to persons resulting from various defined acts, with certain specified results and specified injuries, by use of specified various methods, weapons and firearms, at specified locations, against certain specified classes of persons, committed by specified classes of persons, etc. Section 666.07 likewise defines certain punishable offenses composed of combinations of theft offenses and harm to persons offenses.
Section 666.08 provides different levels of punishment for each offense.

II. C. 2. THE FACTS:
Late one evening, the defendant, a 19 year old male, travelling on a public bus in a city, by trickery distracts the attention of a 55 year old female passenger and stealthily filches from her person her purse containing $55 in cash money.

II. C. 3. THE CHARGES AND CONVICTIONS:
The defendant is charged, tried and convicted of twelve theft counts charging violations of the twelve offenses defined in section 666.03, J.S.

II. C. 4. THE ARGUMENT:
On appeal, the defendant argues that all of the offenses of which he has been convicted are in substance and law "the same offense" being theft and his multiple convictions violate his state and federal constitutional double jeopardy rights. The State argues that the statute provides that the defendant "is to be convicted and sentenced for each criminal offense committed in the course of one criminal episode or transaction" except only as to "offenses which require identical elements of proof" and further argues, correctly, that under the Blockburger test, each offense of which the defendant was convicted has one essential element not required of any other offense.

II. C. 5. THE ISSUE:
In analyzing and differentiating criminal offenses to determine if each of two or more offenses constitute "the same offense" as to which a defendant cannot under constitutional principles be twice placed in jeopardy (i.e., charged, tried, convicted or punished) is the proper analytical method the strict "Blockburger" test under which the defendant's 12 convictions would be upheld or is a refined "Blockburger" test comparing only the elements of the one core offense of theft under which the defendant would be convicted for only one offense, (albeit the one offense alleged and proved that provides for the most severe sanction)?

II. C. 6. THE ANSWER:
It depends on the court's view of the historical reasons and purposes for, and its interpretation of, the constitutional double jeopardy clause.

II. D. RECENT DEVELOPMENTS:
In an analogous case, Cleveland v. State, 587 So.2d 1145 (Fla. 1991), the Florida Supreme Court, recognizing the continuing vitality of Hall v. State, 517 So.2d 678 (Fla. 1988) which was predicated in large part on a modified "refined" Blockburger substantive analysis in Carawan v. State, 515 So.2d 161 (Fla. 1987), held that when a robbery conviction is enhanced because of the use of a firearm in committing a robbery, the single act of the use of a firearm in the commission of the same robbery cannot form the basis of a separate conviction for the use of a firearm while committing a felony. Likewise, robbery is an enhanced form of theft. In robbery, a theft offense is enhanced by the use of "force" in the taking. Therefore, where the "force" is used to enhance that theft to a robbery the same "force" cannot, under constitutional double jeopardy protections, form the basis for a separate "violence" offense, i.e., battery or aggravated battery. However, whether the "force" involves only acts used to enhance the theft to a robbery or whether force in excess of that admissible under the robbery charge, depends *1111 on the factual scenario in each case. Therefore, as a practical matter, the question posited at the beginning of this opinion cannot be answered "yes" or "no" by application of a per se rule of law  the answer depends on the facts and circumstances of a given case.

II. E. LEGISLATIVE INTENT VERSUS JUDICIAL CONSTITUTION INTERPRETATION OF THE CONSTITUTIONAL DOUBLE JEOPARDY CLAUSE:
The interpretation and construction of constitutional due process and of the double jeopardy clauses is a judicial function. It is quite proper for state legislatures to pass legislation bestowing benefits upon citizens including those accused of crime, that are not guaranteed by constitutional provisions. It is even proper for legislatures to codify or implement constitutional rights. For example, the legislature has legislated statutory speedy trial rights[24] and the judiciary has adopted speedy trial procedural rule rights[25] that go beyond the related constitutional rights.[26] The so-called rule of lenity in section 775.021(1), Florida Statutes, is but a codification of case law relating to basic constitutional due process rights. Section 775.021(4), Florida Statutes, as it presently exists,[27] is but the Florida Legislature's opinion as to the scope of constitutional double jeopardy as it relates to the identity of offenses legal problem. Judicial interpretation of section 775.021(4), Florida Statutes, substituting that legislative opinion for judicial interpretation and construction of double jeopardy rights under the state constitution permits, and also constitutes, violation of the constitutional separation of powers clause.
However, while the legislature can enlarge upon constitutional rights, the legislature cannot constitutionally legislate so as to limit or restrict the scope of constitutional rights. A statute or rule may be consistent and compatible with, and may implement, emulate or expound upon, a constitutional right but should never be confused with the constitutional right and it is vital to ever remember that a statute or rule is not the equal or equivalent of, nor a substitute for, the constitutional right and that neither the original enactment of a statute, nor adoption of the rule, nor any amendment or repeal thereof, can in any manner reduce or defeat or adversely affect a constitutional right nor detract from it one dot, jot or tittle. These truths should be in the foreground of any judicial opinion construing section 775.021, Florida Statutes, as amended by Ch. 88-131, § 7, Laws of Florida, as bearing upon any legal question involving the scope of constitutional double jeopardy rights.[28]
Carawan was a case involving construction of the constitutional double jeopardy clause. Unfortunately the opinion in that case also supported its conclusion in part by referring to the statutory codification of the legislature's views of due process and double jeopardy concepts contained in section 775.021, Florida Statutes. The legislature saw itself as blamed for a "bad" result and seized what it perceived as a judicial recognition of the legislative prerogative to control due process and double jeopardy rights, by amending the emulating statutes, and amended the statute with the intent of changing the result in Carawan. Some subsequent cases appear to confirm the effectiveness of the legislature's authority to accomplish that result. The opinion *1112 in Cleveland v. State appears to simply proceed to ignore this unhappy[29] side track and to once again decide an "identity of offense" double jeopardy problem by construing the constitutional right involved rather than the statutes merely emulating the constitutional double jeopardy concept.[30]See, for example, Sigler v. State, 590 So.2d 18 (Fla. 4th DCA 1991) correctly holding, without a strict Blockburger-type analysis of the elements of the two offenses, that factually a robbery can include a false imprisonment and when it does the accused cannot be convicted for the false imprisonment offense. Similarly this court long ago held, under the facts of the case, that an aggravated battery count was a lesser included offense of the murder count, Muszynski v. State, 392 So.2d 63 (Fla. 5th DCA 1981). See the close and careful analysis of Judge Altenbernd in Kurtz v. State, 564 So.2d 519 (Fla.2d DCA 1990) and the conclusion that notwithstanding that the limited language in the amendment of section 775.021(4)(a), Florida Statutes, would permit it, nevertheless a person could not be convicted for two overlapping statutory homicide offenses as to one death. In Logan v. State, 592 So.2d 295 (Fla. 5th DCA 1991), this court agreed and followed Kurtz. See also Davis v. State, 590 So.2d 496 (Fla.3d DCA 1991) where the Third District applied Cleveland and held that the defendant could not be convicted for both an armed robbery (§ 812.13(2)(a), Fla. Stat.) and the use of a firearm in the commission of a felony (§ 790.07(2), Fla. Stat.) when both firearm offenses were a factual part of the armed robbery offense. Such a decision takes judicial courage but has long been needed[31] and should be followed.

III. THE CONCLUSION:
When the factual basis for a charge of robbery and the factual basis for some other offense involving "force, violence, assault or putting [a person] in fear" are temporally and spatially intertwined or commingled it cannot be stated theoretically and in the abstract, or held as a matter of law, that a person can or cannot be constitutionally convicted of both offenses  it depends on the facts and the way the case is charged and presented to the jury, or other fact-finder.
In order to validly convict an accused of both robbery and a closely related "violence" offense (1) the accusatorial (charging) document must describe and delineate the factual basis for the second "violence" offense to show clearly and affirmatively that the factual basis is not a part of the force or violence upon which the robbery charge is based, and (2) the jury should be instructed in effect that the facts used to satisfy the "force" element in a robbery conviction cannot also be used as evidence justifying conviction for the "violence" offense also charged, and that a conviction of the separate violence offense must be based on evidence of force not directed to accomplishing the taking of property in the robbery offense (and under the amended robbery statute, nor involved in any force used by the defendant to defend his ill-gotten possession or to escape from the crime scene). If the jury convicts on both offenses due process requires that judicial review consist of (1) examining the adequacy of the charging document to factually distinguish and isolate the two charges from each other, (2) examining the jury instruction on this point to determine if *1113 they are adequate to direct the jury to make the necessary factual differentiation necessary to lawfully convict the accused of both offenses, and (3) an analysis of the facts and circumstances of each case to determine if they are reasonably and logically susceptible of legally supporting convictions of both offenses under the constitution and laws of the state.
When a violation of a criminal defendant's constitutional double jeopardy rights has possibly occurred, the State, as the beneficiary of the possible error, has the burden of proof to establish, in the trial court and in the appellate court, beyond a reasonable doubt, that such a violation did not occur. This burden of proof begins at the time the defendant is charged, continues throughout the trial of the defendant including the instructions given to the jury, and extends to the review of the case at the appellate level. See, Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967); State v. DiGuilio, 491 So.2d 1129 (Fla. 1986). The burden is on the State to establish "beyond a reasonable doubt that the error did not affect the verdict... ." State v. DiGuilio, 491 So.2d 1129, 1139 (Fla. 1986). If there is any "reasonable possibility that the error affected the verdict ..., then the error is by definition harmful." Id. Quoted and applied in Young v. State, 591 So.2d 651 (Fla. 1st DCA 1991). In the context of the legal issue in this case, this means that the record on appeal must show that the State has established beyond a reasonable doubt that no part of the conduct supporting a separate offense involving force or violence of which the defendant was convicted was also part of the force element in any robbery of which the defendant was also convicted.

IV. THIS CASE  THE FACTS AND THE CORRECT CONCLUSION:
In this case the count charging the aggravated battery offense does not clearly allege the factual basis for the charge to show that it was different from the factual basis supporting the robbery offense. Further, this case was not presented at trial and the jury was not so instructed as to assure that both convictions were not based in some part on the same force or violence. To the contrary, the record on appeal shows a rather garden variety strong-arm robbery and not two separate and distinct factual events merely involved in one criminal transaction or episode. The victim testified that when he came out of a filling station after paying (in advance) for gas he was attacked by three or four thugs, one of which was the defendant. The victim testified rather succinctly that:
The first guy that hit me came from my left and kind of tackled me, ran into me really hard and I smashed down into the ground  my right elbow was shattered  other guys jumped on top. I was beaten, slugged... . I heard somebody kept [sic] saying "get the wallet, get the wallet" and finally somebody grabbed  got a hold on my wallet pocket and ripped my pants down to my knee and the wallet came out and [they] ran.
The aggravated battery charged was based on the injury to the right elbow as resulting from great bodily harm, permanent disability or permanent disfigurement to the robbery victim.
Obviously the robbery victim suffered grievous injury. Just as obvious under the facts in this case the force and violence causing that injury preceded and facilitated the taking of the wallet. Accordingly, the aggravated battery was part and parcel of the force or violence element in the robbery. In legal and constitutional substance the robbery included the aggravated battery and there was but one offense for which the defendant cannot be twice convicted. The aggravated battery conviction should be reversed.
NOTES
[1] In Jackson v. State, 338 So.2d 231 (Fla. 3d DCA 1976), dual convictions and consecutive sentences for robbery and either aggravated assault or battery were upheld in the face of a single criminal transaction challenge. The question presented was whether the beating of the victim at the time of the robbery constituted a "facet of the same transaction" thereby preventing consecutive sentences for both convictions. On this issue the court held: "Even if a temporal distinction between the two crimes should have been necessary for the imposition of sentences on each of the crimes, the facts of this case would meet such a test because the record shows that the defendant first struck and beat the victim until she was rendered unconscious and then committed the robbery." In McClendon v. Smith, 372 So.2d 1161 (Fla. 1st DCA 1979), dual convictions for aggravated battery and robbery were upheld against a double jeopardy challenge where, during the robbery of an elderly blind man in his home, one of the assailants shot the victim in his hand. The court found that the "aggravated battery was a complete and separate crime from the robbery and that the shooting of [the victim] was not an essential element in the robbery charge."
[2] This is assuming, of course, that the state chooses not to charge him with one first-degree felony pursuant to section 775.087.
[3] See Carawan, 515 So.2d at 165.
[4] The legislature has used the words "shall be reclassified" rather than "permits such a reclassification" in section 775.087(1).
[1] "Thou shalt not kill." Deuteronomy 5:17.
[2] "Neither shalt thou steal." Deuteronomy 5:17.
[3] There are, and were, other categories, such as crimes against God (blasphemy, etc.); crimes against nature; crimes against government (high crimes, such as treason) crimes against society (such as crimes against public safety), and crimes against humanity, etc.
[4] At common law, larceny was defined by six elements as (1) the taking (manucaption) and (2) carrying away (asportation) (3) of the personal property (4) of another (5) without consent (6) with the specific felonious intent (animus furandi) to permanently deprive the possessor of its use and benefit. 2 Burdick, The Law of Crime § 497 p. 263 (1946).
[5] Larceny is not the nucleus for some property offenses, such as arson, malicious mischief, and burglary.
[6] It still works like that: a simple assault (§ 784.011, Fla. Stat.) and a petty theft (§ 812.014(2)(d), Fla. Stat.) are each second degree misdemeanors subject each to but 60 days confinement (§ 775.082(4)(b), Fla. Stat.). However, use a simple assault to commit a petty larceny and  zip  by joining and merging the two severable events into a double-based factual criminal "episode" or "transaction" the result becomes in law the compound offense of robbery (§ 812.13, Fla. Stat.) punishable at least as a second degree felony punishable by 15 years confinement (§ 775.082(3)(c), Fla. Stat.). When the presence of another "aggravating" element is involved (the use of a firearm or deadly weapon), the result is a first degree felony offense (armed robbery) (§ 812.13(2)(a), Fla. Stat.) punishable by [a term of years not exceeding] life imprisonment. Any offense involving the use, or threat of use, of force or violence against a person in order to take property from the presence of that person causes the same result: the two lesser offenses are merged factually and in legal contemplation into the one greater offense  robbery. The far greater punishment for the one greater "compound" offense is the answer to all qualms as to judicial decisions holding that constitutional double jeopardy prohibits trials and convictions for both the "greater" offense and some lesser offense included in the greater offense when both are factually based on the same misdeed.
[7] The protection of the burglary statute in Florida now extends to all structures at any time of the day or night, see, § 810.02, Fla. Stat.
[8] The other type of larceny from the person was when force was not used such as by picking a pocket, or of like privily without the possessor's knowledge. The saccularii, or cut-purses, were more severely punished than common thieves by both Roman and Athenian laws.
[9] In the days of The Good Samaritan about the only thing poor travellers had worth stealing were the robes they wore and, of course, it took force or violence to take their robes from their persons. It has been suggested that for this reason the larceny of a robe from a person became known as robbery. The more noble Romans had another problem: thieves (balnearii) stealing their robes while the owners were taking a public bath. While this larceny was not "from the person" and did not involve pretaking violence, nevertheless, the practice was such a nuisance and embarrassment that it was made an aggravated larceny offense and punished the same as have been cattle thieves (abigei, or rustlers) which, since early days, have been, and still are, considered to have committed an aggravated larceny (abigeatus) see § 812.014(2)(c)5., Fla. Stat.
[10] Blackstone, Commentaries on the Laws of England, Vol. 4, Ch. 17 p. 241.
[11] At common law, robbery was defined as "the felonious taking of money or goods of value from the person of another, or in his presence, against his will, by violence, or putting him in fear." Williams v. Mayo, 126 Fla. 871, 172 So. 86, 87 (1937); 2 Burdick at § 591.
[12] In 1977 the Florida Legislature (Ch. 77-342, § 4, Laws of Florida) eliminated a "taking" (manucaption) as an essential element of the omnibus theft statute (§ 812.014(1), Fla. Stat.) and the supreme court has recently held that the reference in the robbery statute (§ 812.13(1), Fla. Stat.) to larceny does not mean common law larceny but statutory theft (§ 812.014(1), Fla. Stat.) [in effect holding that in explicitly amending the theft statute the legislature impliedly amended the robbery statute (§ 812.13(1), Fla. Stat.]) and changed the meaning of the word "larceny" in the robbery statute. See Daniels v. State, 587 So.2d 460 (Fla. 1991). Query: If the robbery statute does not require a taking [the statute twice refers to "taking"] how can a taking by force, violence, assault, or putting in fear be an essential element, if no taking at all is required? In legislating criminal offenses, instead of piecemeal amendment of statutes, which when originally enacted merely codified common law crimes, to solve problems of the moment [see e.g., Royal v. State, 490 So.2d 44 (Fla. 1986)], the legislature should leave intact the original common law crimes  which were, and are, the distilled wisdom of centuries of experience  and merely enact new separate and distinct statutes to create additional offenses thought needed and not covered by a common law offense. Embezzlement was enacted as a statutory offense because the act did not constitute common law larceny because the offender obtained possession by consent rather than through a felonious taking. See Statute of 21 Henry VIII, Ch. 7 (1530) and § 812.012(2)(d)1., Fla. Stat. (1989).
[13] "He who hath taken by force, seems to be the more iniquitous thief."
[14] 2 Burdick, The Law of Crime, § 598 (1946).
[15] Id. at § 599, and § 812.13(1), Fla. Stat.
[16] 2 Burdick at § 599a. If the force or violence is so great that the "lesser" crime against the person provides greater punishment than the compound property offense (robbery) such as, when a homicide results, then the offender should be punished for the more serious compound offense against the person  felony murder  and not for the less severely punished compound property offense (the robbery). He may be charged and convicted of either, or neither, of the "greater" (compound) offenses, but not both and not one greater and also a lesser offense that is an inherent part of the greater offense.
[17] § 775.021(4)(b)3., Fla. Stat. (1988) and State v. Rodriguez, 500 So.2d 120 (Fla. 1986) (Shaw, J., concurring).
[18] See Hall v. State, 549 So.2d 758 (Fla.3d DCA 1989) (convictions for both robbery and battery, where the battery occurred contemporaneously with the robbery were found to have constituted double jeopardy) and Sheppard v. State, 549 So.2d 796 (Fla. 5th DCA 1989).
[19] As should be obvious from Justice Thornal's outstanding opinion in the seminal case of Brown v. State, 206 So.2d 377 (Fla. 1968), the concept of "greater" and "lesser" criminal offenses involves a substantive analysis of the elements of the compared offenses and of the factual events alleged and offered as proof (or which existed and could have been introduced by the State as evidence under the facts as alleged) and has absolutely nothing to do with the statutory penalties for the two offenses; Ray v. State, 403 So.2d 956 (Fla. 1981) and State v. Carpenter, 417 So.2d 986 (Fla. 1982) and other cases containing statements to the contrary notwithstanding.
[20] The exception in section 775.021(4)(a), Florida Statutes (1988) as to offenses which are "degrees of the same offense as provided by statute" attempts to substitute form (i.e., only "lesser" offenses made degrees of one "greater" offense by statute) for substance and thereby substitute legislative determination for judicial analysis of substance in the interpretation and construction of the purpose and scope of constitutional double jeopardy in the context of the "identity of offenses" problem. See Judge Altenbernd's problem with this statutory qualification in Kurtz v. State, 564 So.2d 519 (Fla.2d DCA 1990).
[21] See Barnhill v. State, 471 So.2d 160 (Fla. 5th DCA 1985) (jury question presented as to whether "force" was separate from attempted robbery). See also Cave v. State, 578 So.2d 766 (Fla. 1st DCA 1991), where the court in reliance on the amendment to section 775.021(4), Florida Statutes, (Ch. 88-131, § 7, Laws of Florida) did not apply Carawan v. State, 515 So.2d 161 (Fla. 1987) and found convictions for aggravated battery and armed robbery did not constitute double jeopardy on the basis of "legislated intent." The rationale and result in Cave is questionable in view of Cleveland v. State, 587 So.2d 1145 (Fla. 1991).
[22] Here is where the Royal amendment to the robbery statute will work to constitutionally curtail the prosecutor's discretion in prosecuting offenses which, absent the statutory amendment, would have been legally separate from the robbery and hence separately punishable. See discussion infra.
[23] The unintended result of the statutory change is affected by a defendant's due process right to have the State prove beyond a reasonable doubt every fact necessary to constitute the crime charged. The statutory definition of robbery now encompassing "force" after the taking precludes a conviction for both a robbery and a battery or aggravated battery where the "force" is after the taking and would have, prior to the Royal amendment, constituted a separate "violence" offense distinct from the robbery. When the guilt of the accused depends on the time of the occurrence of some element, such as the force element of a robbery, the presumption of innocence will require the State to prove at what point the "force" occurred. See Mullaney v. Wilbur, 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975) (state statute which required defendant charged with murder to prove that he acted "in the heat of passion on sudden provocation" in order to reduce the homicide to manslaughter found unconstitutional violation of the defendant's due process rights. The State must prove beyond a reasonable doubt every fact necessary to constitute the crime charged including proving the absence of the heat of passion on sudden provocation when the issue is properly presented); In re Winship, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970) (reasonable doubt standard of criminal law has constitutional stature and juveniles, like adults, are constitutionally entitled to proof beyond a reasonable doubt when they are charged with a violation of criminal law); Hankerson v. North Carolina, 432 U.S. 233, 97 S.Ct. 2339, 53 L.Ed.2d 306 (1977) (Mullaney rule given retroactive in application). Constitutional due process in criminal cases is supported by the statutory codification of the rule of lenity (§ 775.021, Fla. Stat.) which requires strict construction of the provisions of criminal statutes in favor of the accused. The legislative expansion of the force element to vague "post-taking force" in the amended definition of robbery necessarily prevents the possibility of constitutional convictions for separate "force" offenses occurring after a taking for which a robbery conviction is also sought, unless the State proves beyond a reasonable doubt that the conduct supporting the separate force offense constitutes no part of the force elements (as expanded by the Royal amendment) in any robbery of which the defendant is also charged.
[24] § 918.015, Fla. Stat.
[25] Florida Rules of Criminal Procedure 3.191 and 3.251.
[26] Art. I, § 16, Florida Constitution; U.S. Const. amend VI and Barker v. Wingo, 407 U.S. 514, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1973).
[27] Section 775.021(4), Florida Statutes, was originally enacted to abolish the single transaction rule, a court created concept that in concept and result somewhat resembled, and was generally confused with, constitutional double jeopardy rights, see Baker v. State, 425 So.2d 36, 50 (Fla. 5th DCA 1982).
[28] Judge Wolf in Simmons v. State, 590 So.2d 442 (Fla. 1st DCA 1991) sees the problem involved when the legislature attempts by statute to abolish or change a judicial decision based on, or which overlaps or parallels, due process or other fundamental constitutionally mandated principles.
[29] See the lamentations in the separate opinion in Davis v. State, 560 So.2d 1231 (Fla. 5th DCA 1990).
[30] In a somewhat similar way the U.S. Supreme Court in Grady v. Corbin, 495 U.S. 508, 110 S.Ct. 2084, 109 L.Ed.2d 548 (1990), appears to have returned to judicial interpretation of the constitutional double jeopardy clause and away from the "legislative intent" determination used in Missouri v. Hunter, 459 U.S. 359, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983) and Ohio v. Johnson, 467 U.S. 493, 104 S.Ct. 2536, 81 L.Ed.2d 425 (1984). The "conduct" emphasized in Grady v. Corbin can be seen as the "evil" referred to in Carawan and both are examples of the concept of a basic nuclear or core offense composed of elements to which we added ancillary elements in order to distinguish and punish more severely egregious instances of the basic, core, nuclear offense.
[31] See the dissent in Smith v. State, 548 So.2d 755 (Fla. 5th DCA 1989).